*505
 
 .Mr. Justice Johnson
 

 delivered the opinion of the Court:—
 

 The plaintiffs here were .defendants below, to an action of ejectment, brought to recover eight thousand acres of land lying in the state of Kentucky.
 

 The law of real estates in Kentucky, therefore, is the law.of this Court, in deciding on the rights of the parties. The plains tiffs below,-derives title under, 1st, a patent to George Mason of Gutiston, issued in 1787" — 2d, a deed of bargain and vs'ale, from s.even out of nine legal representatives of the' patentee, their brother, to George Mason of Lexington,, executed in 1794 — 3d, a codicil to the will of George Mason <Jf Lexington, devising the premises to the lessor of the plaintiffs.' Judgment was rendered for plaintiffs,- to recover eight-ninths of the premises. The defendants below relied on their possession, affecting to claim through the .patent to the elder Mason; but adducing no. evidence to connect themselves with it The questions to be here decided are brought up by a bill of exceptions, taken by the defendants below; and they will be considered, as they regard the deduction of title, in the order in which they have been stated above.
 

 The first question in this order, relates to the deed executed by the representatives of Mason the elder, to Mason the younger/, tinder whose will .the lessor of the plaintiffs makes title... No exception was taken to. the proof, upon which this, deed went to the jury. The exceptions go to the nature, and extent of the estate, which passed under it. And-first; it was insisted, that it could pass nothing, unless the plaintiffs should show, that the land sued for was entered after George Mason senior made his will, and not patented at his death; on the ground that, otherwise, it passed under his will, and .did not descend to these donors.
 

 But it is obvious that this instruction was properly refused, ■since the fact nowhere appears in the record that the elder Mason ever made a will competent in law to transfer, real estate. The deed, it is true, purports to carry into effect his intentions towards liis children; but-now constat; whether, that intention had ever been, signified, otherwise, than by parol or by an informal wilL If a will had ever been executed, with the formalities necessary to defeat the heir at law, the defendants should have availed themselves of- it by proof.
 

 The next instruction prayed for by defendants, and rejected by the .Court, was; “ that if from the evidence, the jury believed that the daughters of . the patentee were dead, before the suit was brought; that then they ought to find for defendants, \s to the undivided interest of such daughters, and that the ,ieed did not pass their‘interest The Court instructed' the
 
 *506
 
 jury, that the deed did. not pass the interest of the daughters, but passed the interest of their husbands, who were tenants by courtesy; although they had never had other or further possession of the land,-than what they acquired by deed.
 

 To understand this part of the bill óf exceptions it is necessary to notice, that from the record it appears, that among the parties of the first part to the deed to G. Mason the younger, . were four daughters of G. Masón the elder, and their husbands; that the daughters had formally executed a rele,ase of inheritance, under a commission issued from a. Court in Virginia; but because the states were then separated', as a judicial proceeding, it had no validity as to lands in Kentucky; and the lessor of the plaintiffs was compelled to stand upon the inter: est conveyed to him by the deeds of the husbands, as tenants by the courtesy.
 

 In order to prove the. pedigree of the honors, the marriage, birth of issue, &c., and-of the sons-in-law of the elder Mason, the testimony of two witnesses was ■ introduced by plaintiffs, taken under the Act of Congress. To thesintroduction of this testimony an objection was made and overruled; and this constituted another. ground\of exception, which however has been very properly waived by the counsel in argument here. It appears that the requisitions of the Act have been well complied with-
 

 This testimony, besides establishing the pedigree, marriage, 'and birth of issue &c., of the husbands and their wives, and identity of. the lessor of thé .plaintiffs, ¿s devisees of G. Mason the younger, also goes to prove the death.of some, if not. of all the daughters;' and the exception is intended to raise the question, whether in the absence of evidence of actual seisin, the, husbands-had good, estates as tenants by the courtesy, in the portions of the land belonging to their respective wives; if they .had not, then by the, death of their wives,, their estates were determined. To repel this objection to the vesting of the .estate by the courtesy,- evidence is introduced into *he bilí of exceptions to.prove, that “the adverse possession of thq premises, relied onb'y the defendants,- did n6t commence until after the execution of the deed, and after the death of George Mason’; in .other words, that the land was waste, or as is sometimes' styled,
 
 wild lands”
 
 at the time, of executing the deed, and at all times before and down to the time of the devise, from George Mason jun. to the lessors of the plaintiff took effect.
 

 It is.believed that the rigid rules of the Common Law, have never been applied to a wife’s estate .in lands of this description. In the state of New-York (8
 
 John. Rep.
 
 271) these rules have been solemnly repelled; and we know of no adjudged case, in uny. of the states, in which they have been recognised as ap
 
 *507
 
 pl-icable. It would indeed be idle to compel an heir or purchaser, to find his way through pathless deserts, into lands still overrun by the aborigines, in order to “.break a twig,” or “ turn a sod,”- or “ read a deed,” before he could acquire a legal freehold. It may be very safely asserted, that had a similar state of things existed in England when the conqueror introduced this tenure; the necessity of actual seisin; as an- incident to thehusband’s right, would never have found its way across the channel..
 

 It is true, that Perkins and Littleton, and other authors of high, antiquity, and great. authority, lay down the necessity of actual seisin, in very, strong terms, and exemplify.it, by cases, which strikingly illustrate the- doctrine. But, even they, do not represent it as so unbending as to be uncontrouled by reason.'
 

 The distinction is taken, between things which lie in livery •and things which lie in grant; and with regard tp the latter, the seisin in law, is enough, because they admit of no other; and as Lord Coke observes “ the books say it would be un? reasonable the husband should' suffer, for what .no industry of his could prevent;” and further “that the true reason is, •that the wife has those inheritances which lie in grant, and not in livery, when the right first descends upon her, for • she hath . a.thing in grant when she has a right to it, and nobody else in.terposes to prevent it.” And in another place he' says “ a husband shall be tenant by courtesy, in respect of his -wife’s seisin in law, where it wa&impossible for him to get an actual seisin,” for “the favour which the law shows to the husband that has issue by his wife
 
 shall not be lost without some default
 
 in him. ” So when describing what is livery of seisin, and defining the distinction between livery and'deed, and livery in-law, he says of the latter “if the feoffee elaims'the latid, as near as he dares to' approach it, for fear of death or battery, such entry in -law shall execute-the livery inlaw.”
 

 And as a proof that even in his time the Common -Law 'had begun to untrammel itself of the rigorous rule, that livery of seisin, or entry, was indispensable to vesting a freehold;-the fact- may be cited, that livery of seisin was held unnecessary to a fine,, devise, surrender^ -release or confirmation to' lessee for years. -The mode of conveyance, by lease and'release, and some other modes, it is well known,' arose,, out of an effort to disembarrass the transfer of titles, of an idle form, which had survived the feudal system.-
 

 As it relates to the tenure by courtesy,,the necessity of entry grew out of the rule, which invariably- existed, that an entry must be made in order to vest a freehold;
 
 (Co. Lit.
 
 51,) and out of that member of the definition of the tenure by courtesy, which requires that it should be inheritable by the issue.' When a 'descent was cast,, the entrv of the mother was necessary, or the'
 
 *508
 
 heir made .title direct from the grandfather, or other person last seised.
 

 But in Kentucky, we understand, the livery of seisin is unheard 'f. Freeholds are acquired by patent, or by deed, or by descent, without any further ceremonies; and in tracing pedigree, the. proof of entry, as'successive descents’are cast; is never considered as necessary to a recovery, or in any mode affecting the course of descent.
 

 •If a
 
 right of entry
 
 therefore exists, it ought by analogy to be sufficient to sustái'n the tenure acquired by the husband, where no adverse possession exists; as it is laid down in the books relative to a seisin in law “he has the thing,- if he has a right to have it.” Such was not the ancient law; but thé reason of it has ceased.. It has been shown, that in the most remote periods, exceptions had been introduced on the sarnie., ground; and in' the most modern, the rule has been relaxed upon the same consideration.' Wé ought not to be behind.the British Courts in the liberality of our view's, on-the subject of this tenure.' A husband, formerly, could not have courtesy of an use; that is, where his wife ivas
 
 cestuy que use, (Perkins’s Curtesy, fo.
 
 89,) and this continued to be thé law, down to the time of Baron" Gilbert:
 
 (Law of Uses and Trusts,
 
 239,) at present it if "...ly settled in equity, that the husband shall have courtesy of a trust, as well as of a legal estate, (2
 
 Vern.
 
 536. 1
 
 P. W.
 
 108.
 
 Atk.
 
 606,) of an equity of redemption, a contingent use;.or money to be laid out in lands.
 

 The casé made out in the bilk of exceptions,' is one in which -there could not possibly hay.e been any default in the husbands, since the disseisin, by defendants, did not take place until after the death of George Mason jr. and of consequence, after the transfer of title by the husbands, and after the devise took effect in favour of the plaintiff’s lessor.
 

 . These points being disposed of,, it only-remains to consider the questioná raised upon the introduction of the will of George Mason jr. or*rather of the -codicil, ..under which the lessor of the plaintiffs makes title.
 

 Under a law of the state of Kentucky, and the decision of their Courts upon it, a will with two witnesses, is sufficient to pass real estate; and the copy of such a will, duly .proved and recorded in another state,'is good evidence of the execution of the will.
 

 ' The objection here is, that it does not appear from the exemplified copy,' that this codicil was duly-proved; — because the . probate does not go to that codicil, but to another; and. secondly, because'it appears to'hav'e been admitted to record on the testimony- of á single witness.
 

 
 *509
 
 The probate' purports “ that the two codicils were proved by thé oath of Daniel M‘Carty.” From the exemplification it appears, that at three. several dates the testator, added to his will, what he calls codicils, but as there is no signature to the first, we are satisfied that the first and second Mere well considered as making but one; and therefore that the probate although purporting to go to two codicils only, was well considered ás going to this; which but for the, want of the signature to the first, would have been the third codicil. What is decisive on this subject, is, that the first two codicils have no subscribing witness, distinct froth the last; — and the .name of M‘Carty, the witness sworn, is subscribed to the second, or>fts the defendants contend it.shpuld be considered, to the third -codicil. ,
 

 , With regard to the second' exception to-the sufficiency of the proof of this codicil, it can only be necessary to resort to adjudged cases, as they, seem conclusive to this point.
 

 There were two witnesses to this codicil, to wit, Thompson Mason and M‘Carty, M‘Carty only was sworn, and the probate upon which it was ordered to be recorded, imports, that the two' codicils were proveed by the oath of Daniel McCarty! In the case of Harper et al.
 
 vs.
 
 Wilson et al., decided in the Court of Appeals of the" state of Kentucky, in 1820, in which the right to lands was in controversy; llie probate was-in' these words, “ this will was produced in Court proved by the oath of Sarah Harper, a subscribing witness thereto, and'ordered to be recorded.” There was another subscribing-witness to tlv will, and exception tvas.taken to the sufficiency of the prapi. The language of the Court in that case Was. “ As to the proof of the- execution of the will it need only be remarked that its admission, to record, is sufficient to show that the witness' b\ whom it wáá proven in that Court, established every fact essential to its due execution; and.it is a settled; ruie, that'although more than one witness is required to subscribed will-disposing of lands, the evidence of one may be sufficient to prove it.” (2 Marhall.) The ’same doctrine.has been since fully recognised in the case, of Turner
 
 vs.
 
 Turner,
 
 (1 Litt. Rep.
 
 103,) adjudged iii the same Court in 1822-; and the identity of the, certificate and, facts in this case with those-in the case, of Harper
 
 vs.
 
 Wilson, leaves nothing for this Court to deliberate upon.
 

 There is spread.upon thé record, a considerable.body of-testimony, taken by- the Court by which the will had been ,pré- ' vio'usly admitted to record, andiwhich upon the, face of it, appears to have been taken in order ¡to." remove all doubt on the - sufficiency of the will, and authenticity of*thé attestations to it. Bift as it does not appear to have been followed up by any order
 
 *510
 
 of that Court, it was not taken into view in the bill, of exceptions, and made no part of the. evidence in the Court below. It therefore only required this remark in order to prevent any misapprehension on this point.
 

 We are of opinion that there was no error in the judgment below and that it be affirmed with costs.