Thurman, J.
The decision of this cause depends upon the .answer that shall be given to the following question: Is a man entitled to curtesy in lands, the title to which descended to his wife during coverture, but which were in the actual possession of an adverse claimant from the time her title accrued until her death. It is very clear that, by the strict rule of the common law, ho is not; and for the reason that neither the wife, nor the husband in her right, was, at any time during coverture, actually .seized of the premises. Four things, according to the common law, are necessary to create an estate by the curtesy, viz : marriage, seizin of the wife, issue, and death of the wife. Co. Lit. 30 a. And where the wife’s title is derived by inheritance, or any other mode requiring an entry to perfect it, the seizin must be in deed, and not merely in law. Co. Lit. 29 a; Jackson v. Johnson, 5 Cow. 98.
But it is contended, that in Ohio seizin is unnecessary; and this leads us to inquire: 1. What is the reason of the common-law rule requiring seizin? 2. Does the reason exist in this state. 3. If it does not, is the maxim applicable, “ cessante ratione, cessat ipsa lex," the reason ceasing, the law itself ceases?
The books generally, and with but few exceptions, give but one reason for the rulemaking seizin indispensable to curtesy, namely, that as, by the common law, livery of seizin was necessary to the transfer of a freehold estate by deed, and an entry necessary to perfect the title to such an estate, of an heir or devisee, it followed that unless the wife, or the husband in her right, was actually seized, her issue could *nevor, as her heirs, inherit the lands; for, owing to the want of actual seizin, she never acquired an inheritable estate. But unless she had an estate of inheritance there could be no curtesy, as it was indispensable to the existence of curtesy that the mother be seized of an estate which might descend to her heirs, and “ the tenancy by curtesy is an excrescence out of the inheritance.” 3 Bac. Abr. 11 (Bouvier’s edition).
Thus, Littleton says (sec. 52) : “And memorandum that, in ■every case where a man taketh a wife seized of such an estate of tenements, etc., as the issue which he hath by his wife, may by possibility inherit the same tenements of such an estate as the wife *271 hath, as heire tc the wife; in this case, after the decease of the wife, he shall have the same tenements by the curtesie of England, but otherwise not."
Commenting on the above expression, “ as heire to the wife,” Coke saj’s : “ This doth implie a secret of law, for except the wife be actually seized, the heire shall not (as hath been said) make himself heire to the wife ; and this is the reason that a man shall not be tenant by the curtesie of a seisin in law.” Co. Lit. 40 a.
And, in illustration of the law that the wife must have an estate inheritable by her issue, the following case is put: “If lands be given to a woman and to the heires males of her body, she taketh a husband and hath issue a daughter and dieth, he shall not be tenant by the curtesie; because the daughter by no possibility could inherit the mother’s estate in the land.; and therefore where Littleton saith, issue by his wife male or female, it is to be understood, which by possibility may inherit as heir to her mother of such estate.” Co. Lit. 29 b.
Blackstone puts the same case, and adds: “ And this seems to be the principal reason why the husband can not be tenant by the curtesy of any lands of which the wife was not actually seized, because, in order to entitle himself to such an estate, he must have begotten issue that may be ^heir to the wife; but no one, by the standing rule of law, can be heir to the ancestor of any land, whereof the ancestor was not actually seized.” ' 2 Bla. Com. 128.
In a subsequent passage, he suggests an additional reason. It is as follows: “ A seizin in law of the husband will be as effectual as a seizin in deed, in order to render the wife dowable: for it is not in the wife’s power to bring the husband’s title to an actual seizin, as it is in the husband’s power to do with regard to the wife’s lands; which is one reason why he shall not be tenant by the curtesy, but of such lands whereof the wife, or he .himself in her right, was actually seized in deed.” 2 Bla. Com. 132. The only authority referred to by Blackstone, in support of the above, is Co. Lit. 31, where the diversity between dower and curtesy is noticed, but no such reason as Blackstone gives for denying curtesy is stated, although it may be inferred.
What Coke says is as follows : “ For a woman shall be endowed of a seizin in law. As where lands or tenements descend to the husband, before entry he hath but a seizin in law, and yet the wife *272 shall be endowed, albeit it be not reduced to an actual possession,, for it lieth 'not. in the power of the wife to bring it to an actual seizin, as the husband may do of his wife’s land when he is to be tenant by the curtesy, which is worthy the observation.”
As before observed, it is only by inference that this passage supports JBlackstonc’s remark. It is to some extent fortified, however, by the following language in 7 Yinor’s Abr. 149, namely: “ Feme shall bo endowed of a seizin and possession in law, without seizin in deed, quod nota ; for otherwise it is of tenant by the curtesy, and the reason seems to be, inasmuch as the baron may enter in jure uxoris, but the feme can not compel her baron to-enter into his own land.”
On the other hand, the following extract from 3 Bac. Abr. 12, is certainly opposed to the existence of this reason, as the idea is-rejected that the allowing or disallowing curtesy is dependent on the ability or inability, industry or negligence, *of the husband. “But now of such inheritances, whereof there can not possibly be a seizin in'fact, a seizin in law is sufficient; and therefore if a man seized of an advowson or rent in fee, hath issue a daughter,, who is married and hath issue, and he dieth seized, and the wifedieth likewise before the rent becomes due, or the church becomes void, this seizin in law in the wife shall be sufficient to entitle her husband to be tenant by the curtesy, because, say the books, he-could not possibly attain any other seizin, as indeed he could not; and then it would be unreasonable he should suffer for what no-industry of his could prevent. But the true reason is, that the wife hath these inheritances which lie in grant, and not in livery,, when the right first' descends upon her; for she hath a thing in grant when she hath a right to it, and nobody else interposes to-prevent it.”
In Davis v. Mason, 1 Pet. 507, the foundation of the rule is thus-stated in the opinion of the court: “ As it relates to the tenure by curtesy, the necessity of entry grew out of the rule, which invariably existed, that an entry must be made in order, to vest a freehold (Co. Lit. 51), and out of that member of the definition of the-tenure by curtesy which requires that it should be inheritable by the issue. When a descent was cast, the entry of the mother was. necessary, or the heir made title direct from the grandfather, or other person last seized.”
A careful examination of the authorities makes it quité apparent *273 that this is a correct statement of the principal, if not the only, reason of the rule. No other reason is found in the books, except the suggestion before referred to, that curtesy is refused where there was no actual seizin, because the husband might, by diligence, have obtained such seizin. But this idea, as we have seen, is not universally admitted.
Our next inquiry is, Do these reasons, or either of them, exist in Ohio ?
That livery of seizin has never been essential, in Ohio, to the creation of a freehold estate, nor an entry necessary to perfect the title of an heir or devisee, is well known to every ^lawyer. The most common instrument of conveyance is a deed of bargain and sale, which, without the aid of a statute of uses, transfers both the legal and equitable estate. Nay, further, a mere deed of quitclaim, or release, is sufficient, even where the releasee has no prior interest in the land. But our departure from the English law does not stop here; for an adverse possession does not prevent the transfer of title, either by deed, descent, or devise. Whatever title is held by the grantor, ancestor, or testator, may be thus transferred, notwithstanding the lands are adversely held by another. Holt v. Hemphill, 3 Ohio, 232; Helfenstine v. Garrard, 7 Ohio (pt. 1), 275; Hall v. Ashby, 9 Ohio, 96. It might seem, from what was said in Holt v. Hemphill, that an adverse possession would be fatal to a deed; but that such possession in no wise affects it, was expressly decided in Hall v. Ashby.
As, then, a freehold estate is created in Ohio without entry, it is manifest that the principal, if .not the only reason, of the rule requiring actual seizin to give curtesy does not exist in this state.
But allowing that the minor reason before stated did exist in England, does it exist here ? Ought a husband to be denied curtesy in Ohio upon the ground that he might have entered upon the land during coverture, and that if he did not, he was guilty of a fault that deservedly bars his right ? There may have been much reason for saying so in England, when the rule requiring seizin was established; for, by the failure of the husband to enter, the wife and her issue might lose the estate, which it was plainly his duty to prevent, if possible. But in Ohio her title is as perfect before as after entry; and, in general, it would be nothing less than absurd to make a man’s right depend upon whether he had gone for a moment upon thedand and “ broken a twig,” or “turned *274 a sod,” or “ read a deed.” There is, however, one case, and perhaps but one, in which, if curtesy exists, the heirs of the wife might be prejudiced by a failure of the husband to obtain possession, namely, when by such failure the bar of the ^statute of limitations becomes perfect against them. But this would probably occur so rarely as to furnish but a slight foundation for the rule we are considering. Nor is it the only case in which a remainderman, or reversioner, may be powerless to preserve his estate. If A, the owner in fee of lands in the adverse possession of B, devise or convey them to C for life, with remainder to I), it is manifest that, as the statute of limitations began to run against A, and therefore continues to run against C and D, the latter may lose his estate through the neglect or failure of C to obtain posses-session. So, when the statute t begins to run against a -feme sole, and she afterward marry, she may lose her land by the neglect or inability of her husband to recover it.
These possible cases of hardship it is the province of legislation to guard against, and not of the courts. Wore we to say that there shall be no curtesy where the possession was held adversely during the coverture, because to give it might, by possibility, result in the loss of the estate to the heir, it is very probable that, in guarding ■against hardships on the one side, we would open the door to quite .as much, or more, hardship on the other. For it is very far from being true that the failure to obtain possession during the coverture, is always attributable to the husband’s neglect. He may have freely spent his time, labor, and money to recover the land, and yet, without any fault of his, be unable to succeed in the lifetime •of the wife. Decide as we may, and doubtless there will be room for cases of hardship to arise; but, as was truly said by Duncan, J., in Stoolfoos v. Jenkins, 8 S. & R. 173: "Courts can not usurp legislative functions, or new-model the law according to their own ideas •of natural justice, or redress bardships in each particular instance.” And it is never to be forgotten that all wise laws are framed with .a regard to what is likely to occur, rather than to that which is ■only possible.
On the whole,.the conclusion to which we have arrived is, that neither of the reasons given for making actual seizin indispensable to curtesy, affords any sufficient foundation for the rule in Ohio.
*It remains to be considered whether the reason of the rule jhaving ceased, or rather never having existed in this state, the rule *275 itself exists here. Tenancy by the curtesy has always been known to our law and is recognized by our statutes. We can not deny its existence ; but may we not deny the necessity of' a requisite, that properly enough formed a place in the common law, but has no reason to support it in our jurisprudence? We are materially aided in this inquiry by the American decisions upon the subject of curtesy. These decisions may be reduced into three classes :
1. Those in which there being no adverse possession, the husband and wife were held to be constructively seized in deed, and such constructive seizin deemed sufficient.
2. Those in which there was an adverse possession; but a recovery in ejectment, on the demise of the husband and wife or the husband alone, took place during the coverture; and in which there was held to be curtesy, although no actual possession followed the recovery.
3. Those in which an adverse possession was decided to be no bar to curtesy.
Of the first class, Jackson v. Sellick, 8 Johns. 208, and Davis v. Mason, 1 Peters, 506, may properly, perhaps, be called the leading cases. Many others might be cited, for the general current of American authority certainly admits curtesy in this class of cases.
Of the second class, Ellsworth v. Cook, 8 Paige, 643, is the leading case.
To the third class, belong Bush v. Bradley, 4 Day, 298, approved in Chew v. Comm’rs of Southwark, 2 Rawle, 160, etc.
Now, a careful scrutiny of these cases will show that, in nearly all of them, the decisions were arrived at by an application of the maxim “cessante ratione, cessat ipsa lex.” It was so expressly declared in Davis v. Mason. That case respected lands in Kentucky. After giving, in the passage hereinbefore quoted, the reason of the rule requiring seizin, the judge, who delivered the opinion of the court, went on to say : “ But in Kentucky, we understand, the livery of seizin *is unheard of. Freeholds are acquired by patent, or by deed, or by descent, without any further ceremonies; and in tracing pedigree, the proof of entry, as successive descents are east) is never considered as necessary to a recovery, or in any mode affecting the course of descent. If a right of entry therefore exists, it ought by analogy to be sufficient to sustain the tenure acquired by the husband, where no adverse possession exists; as it is laid •down in the books relative to a seizin in law, ‘ ho has the thing, if *276 he has a right to have it.’ Such was not the ancient law; but the reason of it has ceased. It has been shown, that in the most remote periods exceptions had been introduced on the same ground and in the most modern, the rule has been relaxed upon the same consideration. We ought not to be behind the British courts in the liberality of our views, on the subject of this tenure.”
So in Jackson v. Sellick the court said: “ We must take the rule (requiring seizin) with such a construction as the peculiar state of new lands in this country require.”
Both these cases seem to proceed on the ground that the wife, though not actually, was yet constructively seized in deed. Hence the allusion, in each case, to the fact that there was no adverse-possession to rebut the presumption. The question whether an adverse possession would be fatal to the claim to curtesy was not presented. The cases in effect decide, not that seizin in deed is indispensable, but that, if there must be seizin, a constructive seizin is sufficient. But in Bush y. Bradley, the question was directly raised. The premises, during the whole period of the coverture,, were adversely held by a third person. Yet the husband was adjudged to be tenant by the curtesy. The real estate law of Connecticut was, in all respects material to the present inquiry, the same as that of Ohio ; and the court held that, as the reason of the rule requiring seizin did not exist, seizin was unnecessary, and that the symmetry of the law required this decision. To the same effect is the following language of the court in Stoolfoos v. Jenkins, 8 S. & R. 175: “The actual seizin of the husband during coverture is necessary *to entitle him, as tenant by the curtesy, by the common law; .though such actual seizin by the husband is not necessary by our law, if there be a potential seizin, or right of seizin. This has been decided to be sufficient in this state.” This ruling, as well as the case of Bush v. Bradley, was approved in the case in 5 Rawle, 160, before cited, the court holding that it was sufficient to entitle the husband to curtesy, that the wife owned the-land and had a right “to demand and recover the immediate possession thereof.”
In the light of these decisions, and the considerations upon which they rest,- we can hardly err in holding that the reason, or reasons, of the rule requiring seizin in deed, having no existence, in Ohio, the rule itself does not exist. And, certainly, the symmetry of our law demands this. It would be strange indeed, and *277 only lead to confusion and perplexity, if, while every other tenancy may be created in this state without entry, or regard to the fact of adverse possession, a tenancy by the curtesy could not. Nor does a rule strongly commend itself to the good sense of men that makes the existence of the estate depend upon an almost, or quite, imaginary distinction between seizin in law and constructive seizin in deed. The constructive seizin relied on in Jackson v. Sellick, Davis v. Mason, and Ellsworth v. Cook, was in substance nothing but a seizin in law. It is a mere fiction to say that a man is actually possessed of that which is in no one’s possession, and it is plainly untrue to say so when the thing is in the possession of another. The reasoning of the courts in all these cases, if carried to its legitimate result, makes seizin in deed, either actual or constructive, wholly unnecessary; and this result is not in conflict with the principles of the common law. Eor even at common law, a seizin in law is sufficient to give curtesy in all inheritances created without entry. 3 Bac. Abr. 12; Jackson v. Johnson, 5 Cow. 98; Ellsworth v. Cook, 8 Paige, 643. It is therefore a mere application of a common-law principle to say that a seizin in law is sufficient in Ohio, where in no ease is an entry necessary to create an inheritance. In the case before *us, Mrs. Borland was seized in law, for “ seizin in law is a right to lands and tenements, though the owner is by wrong disseized of them.” 6 Jacob’s Law Die. 41. Her husband, there being issue born, became tenant by the curtesy, and as he was yet in life when the ejectment was brought by her heirs, the common pleas did right to nonsuit them.
The decision of this case also decides the case of Doe ex dem. Hunter et al. v. Durrel; the only difference in the cases being that there was an adverse possession in the one and not in the other.