### JOHN MURDOCK *v.* W. A. REED, ET AL.

In Ohio, by virtue of section 17, of the statute of descent and distribution, passed March 14, 1853, Swan's St. 323, surviving husbands are entitled to the estate of their deceased wives by the curtesy, whether there has been issue born during the coverture or not; and by section 20, this estate exists in permanent leasehold estates, renewable forever.

SPECIAL TERM.—Action by the husband of Sarah Murdock, deceased, to recover possession of real estate, from her children and heirs at law.

The facts sufficiently appear in the decision.

*W. B. Probasco,* for plaintiff.

*Bryant & Crawford,* for defendants.

STORER, J. The plaintiff asserts title as tenant by curtesy, in certain real property of which his wife died seized, as an estate of inheritance.

It is objected by the defendant that the right does not exist, as there was no issue born of the marriage. The plaintiff replies, and claims that section 17 of the law of descent and distribution, passed March 14, 1853, Swan's St. 323, confers the right. Its language is this: "That surviving husbands, whether there has been issue born during the coverture or not, shall be entitled to the estates of their deceased wives by the curtesy."

There is no other statute of descent in force in Ohio than that which contains this provision, and this, it would seem, so clearly stated its object that no discretion is left to the court. We find nothing, also, in the other sections inconsistent with the plain meaning and intent of the clause referred to.

It is urged, nevertheless, by counsel, that as the husband's curtesy is so well defined by the common law, and all its requisites, for centuries, have been determined, it can not be supposed the legislature intended to create a new estate, while they adopt the ancient name, when one of its essential elements is omitted. We find an answer to this suggestion in the fact that all estates have their signification given by the law, though created by the act of the parties having the power to grant; and the legislature may appropriate any name to define the estate they may be disposed to use, limiting, if need be, the quantity of a legal interest already known, or adding new particulars, as essential to its existence.

Thus, we find it to have been necessary, at common law, when the husband claimed his curtesy, that the wife must have had actual seizin or possession of the land—a bare right to possess not being sufficient, Coke Lit., Thos. Ed. vol. 1, 556, 29, a; and, although the rule in England has been so far modified as to allow the husband's right, in trusts, which are mere rights at law, to be deemed estates in equity, still the rigor of the ancient rule is not materially abated. In the United States, it is not generally, if at all, adhered to. A right of entry, or constructive seizin, is held sufficient in all cases where there is no actual adverse possession. 8 Ohio, 40, Rowland v. Rowland; 4 Day, 298, Bush v. Bradley; 8 Paige, 643, Ellsworth v. Cook; 6 Conn. 499, Kline v. Beebe; 1 Peters, 507, Davis v. Mason; 8 Sergeant & Rawle, 175, Stoolfoos v. Jenkins; 3 Humph. 267, McCorry v. King; 1 Howard U. S. 54, Mercer's Lessee v. Selden. So far, then, as a radical change in an important constituent of the tenancy is concerned, it has already been made, and

a change, too, equally as vital to the existence of the estate as that introduced by our statute.

An attempt was made in 1831, by the English property commissioners, to obtain from parliament a modification of the old law, as to the necessity of the birth of a child, but it was unsuccessful. It indicates, however, that the minds of the profession are not satisfied with the rule as it exists. In Pennsylvania there has been, since 1833, a similar enactment to the provision introduced into our law of descents, and which has been fully vindicated by the Supreme Court of that State, in 4 Watts & Sergt. 145, *Reese* v. *Waters.*

It has been said the estate was originally created to provide a support for the issue to be born; but, it would seem, there was little or no foundation for the statement, as it was only necessary the child should be born alive; and the evidence of life might be the infant's cry, or its bodily motion for an instant, either would fulfill the requisition of the law, and remit the husband to his estate.    8 Co. 35, *Pain's case;* and so subtle was the reason of the rule, that if an infant, though alive in " *ventre sa mere,*" was removed by the Cæsarian operation, it did not thereby constitute a birth during coverture.    The terms used to describe the tenancy, convey the best idea, of its purpose: " It is so called from the favor or curtesy of that law, which made a provision for the husband, to which he had no natural right."    2 Bac. Ab. 218.    We find a similar estate, under a different name, existing before its introduction into England, in the reign of Henry I, 2 Blackst. Com. 126; yet it is said by Littleton, " the husband is called tenant by the curtesy, because this is used in no other realm."    Sec. 35, 29, *a.*

Whatever curious learning may have been employed to ascertain the true origin of this estate, the most satisfactory reason for its creation, is that which is given by Chancellor Kent, from Craig's *Jus Feudale.*    " Curtesy was granted," he says, " out of respect to the former marriage, and to save the husband from falling into poverty."    4 Kent, 28. If, as we are told, the object for which dower is given, is the

support of the wife, the two estates may thus well be harmonized, as tending to effect the same purpose, when claimed by the party surviving.

Whether we regard the object of the provision to the husband, or consider the many modifications made, even in England, in the nature of the estate itself, we do not think there is anything in the legislation of our own State that is inconsistent with itself, or anomalous even in its definition of the tenancy. We must take the provision of the statute to mean what its terms naturally import; and when it is sustained by the only rational account of the origin of the rule, there can be no doubt of the propriety of enacting the law.

We are met with another objection: If the husband's right exists, it is claimed, the wife's estate is not one of inheritance, it being a perpetual leasehold only. At common law, we suppose there could be no curtesy, in an estate for years, however large the term, but by section 20 of the statute of descents, Swan, 324, it is provided that " permanent leasehold estates, renewable forever, shall be subject to the same law of descent and distribution as estates in fee." The former rule is thus abrogated, and the objection therefore fails.

On the whole case, the plaintiff is entitled to his estate, and judgment is rendered accordingly.

Judgment for plaintiff.