## UNITED STATES v. FOUR PARCELS OF LAND IN THE CITY OF NEW YORK et al.

District Court, S. D. New York.

July 15, 1937.

Lamar Hardy, U. S. Atty., of New York City (Irvin C. Rutter, of New York City, of counsel), for the United States.

Miller, Bretzfelder & Boardman, of New York City (Charles B. Bretzfelder, of New York City, of counsel), for defendant Blanche E. Frank.

Talley & Lamb, of New York City, for defendant Delite Pastry Co.

Thomas Jefferson Ryan, of New York City (Talley & Lamb, of New York City, of counsel), for defendant Spiros C. Pappas.

LEIBELL, District Judge.

Plaintiff, United States of America, moves "for an order confirming the report of the Commissioners of Appraisal filed herein on the 10th day of May, 1937, and for a final decree of condemnation."

Four parcels of real estate were involved in this proceeding. As to parcels A and B there is no controversy. Between the filing

of the original and amended petitions herein, agreements were reached by which the owners of said parcels accepted the amounts deposited in the registry of the court with the declaration of taking, by the Secretary of the Treasury on December 13, 1935.

As to parcel D, the owner of the fee filed no exceptions to the report and apparently is content with his award. The only controversial issue in respect to said parcel D is the amount that should be allowed the Delite Pastry Company, Inc., the tenant of said premises, for certain fixtures and bakery equipment used in its business. The claim covered fifty-one separate items, five of which were withdrawn before the commissioners, and of the remaining forty-six the commissioners allowed only seventeen and awarded therefor the total sum of $2,-668.87. As to the amounts awarded for items which were allowed in the commissioners' decision, the principle laid down in Benedict v. City of New York (C.C.A.) 98 F. 789, 790, applies: "In proceedings to acquire property for public use, the court, on an application to confirm the award of the commissioners of appraisal, will not ordinarily weigh conflicting evidence in considering whether it is adequate or excessive; but, if the commissioners have proceeded upon a wrong principle, the court will refuse to confirm."

The same question was discussed in Shoemaker v. United States, 147 U.S. 282, 305, 13 S.Ct. 361, 393, 37 L.Ed. 170:

"In connection with this part of the subject, we may appropriately consider the objection made to the action of the court below in declining to review and pass upon the evidence that had been produced before the commissioners.

"If, as we have said, the court below was right in refusing to restrict the commissioners to a mere consideration of the evidence adduced, then it would seem to follow that the court could not be legitimately asked, in the absence of any exceptions based upon charges of fraud, corruption, or plain mistake on the part of the appraisers, to go into a consideration of the evidence. The court cannot bring into review before it the various sources and grounds of judgment upon which the appraisers have proceeded. The attempt to do so would transfer the function of finding the values of the lands from the appraisers to the court. Such a course would have presented a much more serious allegation of error than we find in the objection as made.

"The rule on this subject is so well settled that we shall content ourselves with repeating an apt quotation from Mills on Eminent Domain, (§ 246), made in the opinion of the court below: 'An appellate court will not interfere with the report of commissioners to correct the amount of damages except in cases of gross error, showing prejudice or corruption. The commissioners hear the evidence, and frequently make their principal evidence out of a view of the premises, and this evidence cannot be carried up so as to correct the report as being against the weight of evidence. Hence, for an error in the judgment of commissioners in arriving at the amount of damages there can be no correction, especially where the evidence is conflicting. Commissioners are not bound by the opinions of experts or by the apparent weight of evidence, but may give their own conclusions.' "

As to the items that were allowed by the commissioners there might have been a question as to whether some of them were trade fixtures or equipment so attached to the realty that they could not be removed without substantial injury either to the real estate or to the fixtures. But the attorney for the plaintiff has moved for a confirmation of the report and filed no exceptions because, he states, he assumed that the tenant had accepted the commissioners' decision on all the items and that the tenant was not filing any exceptions. However, the tenant orally objected on the return day of the motion as to items not allowed and as to the amounts awarded for items that were allowed. On the question of the amounts awarded for items allowed the principle from the Shoemaker Case applies. A consideration of the items not allowed classifies them as trade fixtures or equipment that were not so attached to the realty as required any award therefor in this proceeding.

In New York Life Ins. Co. v. Allison, 107 F. 179, 181, 182, the Circuit Court of Appeals of this, the Second Circuit, held:

"In determining what annexations to real property, of chattels, constitute a part of the realty, the federal courts ascertain the local law of real property by the decisions of the courts of the states in which the property is situated, and, when these decisions are explicit and uniform, adopt them as the rule of decision. Davis v.

Mason, 1 Pet. 503, 7 L.Ed. 239; Hinde v. Vattier, 5 Pet. 398, 8 L.Ed. 168; Suydam v. Williamson, 24 How. 427, 16 L.Ed. 742; Williams v. Kirtland, 13 Wall. 306, 20 L. Ed. 683. The general rule derived from the decisions of the courts of New York is that unless the annexation is one of a permanent character, so that the machine or other chattel cannot be removed without substantial injury to the freehold, or unless the annexation is of a machine or chattel especially adapted for use in the particular place where it has been put, the purpose of the annexation and the intention with which it has been made are the most important considerations, and are the determining criterion, whether it is a fixture or a chattel. In McRea v. Central Nat. Bank, 66 N.Y. 489, the court of appeals used this language:

" 'If the article is attached for temporary use, with the intention of removing it, a mortgagee cannot interfere with its removal by the mortgagor. If it is placed there for the permanent improvement of the freehold, he may. The mode of annexation may, it is true, in the absence of any proof of intention, be controlling. It may be in itself so inseparable and permanent as to render the article necessarily a part of the realty, and, in case of less permanent mode of attachment, may afford convincing evidence that the intention was that the attachment should be permanent; as, for instance, where the building is constructed expressly to receive the machine or other article, and it could not be removed without material injury to the building, or the article would be of no value except for use in that particular building, or could not be removed therefrom without being destroyed or greatly damaged.' 'These are the tests which have been frequently applied in determining whether the annexation was intended to be temporary or permanent, but they are not the only ones. Nor is it indispensable that any of these conditions should exist.'

"After reviewing some of the leading cases which discuss the criterion of a fixture, the court said:

" 'The object, and not the method of the attachment, appears to be the controlling factor.'

"The decisions of the New York courts are in harmony with the general trend of the adjudications elsewhere, and are to the effect that a machine does not become a fixture by merely attaching it to a building, without the intention to make it a permanent accession, when it is not so incorporated with the building as to lose its identity, or render it difficult or injurious to the building to remove it, or when it is not essential to the use to which the part of the building in which it is connected is appropriated. Murdock v. Gifford, 18 N.Y. 28; Potter v. Cromwell, 40 N.Y. 287 [100 Am.Dec. 485]. The annexation is treated as of a permanent nature when the building is to be devoted to the purposes for which the machinery is to be used, and is not complete in the absence of the machinery."

In Futrovsky v. United States, 62 App. D.C. 235, 66 F.(2d) 215, 216, the Court of Appeals of the District of Columbia held:

"The rule applicable to so-called fixtures in buildings taken in federal condemnations is that, if they can be removed without substantial injury either to the real estate or to the fixtures, they remain personalty and need not be taken as part of the realty.

"This record contains no evidence of injury to the fixtures by removal thereof; and the only evidence tending to indicate injury to the realty is the statement of a witness that the unscrewing of bolts to remove the York refrigerating machine would deface the concrete floor under it.

"But this property is taken over only to be taken down, and, however the question might stand as between a landlord and his departing tenant, the incidental defacing of a concrete floor is no such substantial damage to the real estate as the rule contemplates between the parties to this proceeding."

The report of the commissioners in respect to said parcel D and the claim of the tenant, Delite Pastry Company, Inc., is accordingly approved.

As to parcel C, Blanche Frank, the owner of the fee, filed no exceptions to the commissioners' report and has drawn down all of the fund of $53,000 heretofore deposited by the Secretary of the Treasury as just compensation for said parcel. However, the award of the commissioners was $65,000 or $12,000 in excess of the amount thus deposited. The award is not contested by the plaintiff. In a memorandum heretofore filed herein on July 8, 1937, I pointed out that the $12,000 above mentioned would, according to the testimony on the value of the leasehold given by the expert of the ten-

ant Pappas, be more than sufficient to protect any claim of said tenant for his leasehold interest.

This brings us to a consideration of the claim of Spiros C. Pappas, the tenant of the store in premises known as parcel C herein. The tenant's claim at present is two fold: (1) Compensation for certain fixtures which he claims were taken by the plaintiff or by some third party by reason of the acts of plaintiff's agents; and (2) a claim for the value of his leasehold interest. His claim for the value of the fixtures was rejected by the commissioners who on the evidence affirmatively found "that the said Spiros C. Pappas is not entitled to any compensation for any fixtures in said leased premises." In their memorandum, accompanying their report herein, the commissioners stated:

"Claim of Spiros C. Pappas for restaurant fixtures:—The Commissioners heard the evidence of Mr. Pappas and Mr. Margiotis concerning such fixtures and their disposition as well as the evidence of various persons on behalf of the government, including the marshal and two watchmen, in many matters contradicting the evidence of Pappas. Mr. Pappas claimed that the restaurant fixtures were removed from the premises without his authority and without his knowledge and that it was not until many months later that he had found out that these fixtures had been moved across the way and stored in a basement opposite the premises. Mr. Pappas contradicted himself in several particulars. There was no doubt that all of the fixtures, with the exception of certain unimportant items as to which no evidence of value was given, had been removed by someone who had been in his employ up to the morning of their removal and who was taken into his employ again when he opened a new restaurant and was in his employ when he gave testimony herein, Mr. Pappas claiming that this individual, Margiotis, had acted entirely on his own responsibility and Margiotis testifying to the same effect. However, the Commissioners heard convincing evidence from government witnesses that Mr. Pappas himself knew of and supervised the removal of these fixtures and were fully convinced that they had not been taken by the government nor by third parties, but on the contrary had been removed from the premises by authority of and with the knowledge of Mr. Pappas himself and accordingly denied his claim for the value of the fixtures."

The principle quoted above as to the weight to be given to the commissioners' report applies to this issue also. The report of the commissioners on the claim of the tenant, Spiros C. Pappas, for his restaurant fixtures, is approved.

As to the claim of said tenant for the value of his leasehold interest, the unexpired term of his lease, the commissioners reported that he was not entitled to any compensation. In their memorandum accompanying the report the commissioners dispose of the matter as follows:

"A claim was made by defendant Pappas for the value of the unexpired term of his lease. The pertinent clause in his lease was paragraph 21st which reads as follows:—

" '21st. That should the land whereon said building stand or any part thereof be condemned for public use, then in that event, upon the taking of the same for such public use, this lease, at the option of the Landlord, shall become null and void, and the term cease and come to an end, anything herein contained to the contrary notwithstanding. *Any award for the fee to belong solely to the landlord; any award for the leasehold interest to belong to the tenant.'*

" 'The first sentence is part of the printed form, the last sentence (italicized in this memorandum) is in type. Evidence was given that the landlord had exercised her option to terminate the lease and, in the opinion of the Commissioners, the lease having been thus terminated in accordance with its terms, no award can be made for the leasehold interest."

The lease in question is a contract, and in construing the twenty-first paragraph we should apply the usual rules of interpretation relating to contracts. Having in mind the fact that all of paragraph twenty-first is part of a printed form of lease with the exception of the last sentence which is typewritten, we should center our thoughts on that typewritten sentence in determining the true intent of the parties, if there is any repugnance between the typewritten and the printed part.

As was stated in Lipschitz v. Napa Fruit Co. (C.C.A.) 223 F. 698, at page 704:

"Where there are inconsistent provisions in a contract, one provision being

310

written in, the other being part of a printed form, the written provisions (certainly in the absence of any proof to the contrary) will be assumed to express the intent of the parties. Sturm v. Boker (1893) 150 U.S. 312, 326, 327, 14 S.Ct. 99, 37 L.Ed. 1093; Chadsey v. Guion (1884) 97 N.Y. 333; Loveless v. Thomas (1894) 152 Ill. 479, 38 N.E. 907; Russell v. Bondie (1883) 51 Mich. 76, 16 N.W. 239. In the Chadsey Case Chief Judge Ruger said:

" 'It scarcely needs the citation of authority to support the long-established rule that the printed portions of a contract, when repugnant, must be subordinated to those which are written, and that the latter are presumed, from the circumstance of their special and deliberate insertion by the parties, to embrace the real intent and meaning. Leeds v. Mechanics' Ins. Co., 8 N.Y. 351; Harper v. Albany Mut. Ins. Co., 17 N.Y. 194; Harper v. New York City Ins. Co., 22 N.Y. 441.'

"So, in the case at bar, the conditions which are brought into the contract by the written clause will control whenever they conflict with the conditions which are in the printed form."

See, also, Thomas v. Taggart, 209 U.S. 385, at page 389, 28 S.Ct. 519, 520, 52 L. Ed. 845, from which the following is quoted: "It is a well-settled rule of law, that, if there is a repugnancy between the printed and the written provisions of the contract, the writing will prevail. It is presumed to express the specific intention of the parties. Hagan v. Scottish Union & Nat. Ins. Co., 186 U.S. 423, 22 S.Ct. 862, 46 L.Ed. 1229."

The rule of interpretation is expressed in the following language in the Restatement of the Law of Contracts, § 236 (e): "Where written provisions are inconsistent with printed provisions, an interpretation is preferred which gives effect to the written provisions." See New York Annotations (pages 126, 127) relating to this rule and cases cited therein.

On behalf of the owner of the fee it is argued that under the printed part of paragraph twenty-first the taking of the property in condemnation for public use gave the owner the option to terminate the lease, so that the lease would "become null and void," and that, the owner having given notice of his exercise of that option, the tenant's leasehold term ended absolutely. The argument, as further developed, then

asserts that since the tenant as a result of the public taking and the owner's option notice had no term of years or lease for which any award could be made by the commissioners in the condemnation proceeding, he should receive no award. When confronted with the typewritten sentence that was deliberately added to the printed paragraph and asked what was meant by this sentence, "Any award for the fee to belong solely to the landlord; any award for the leasehold interest to belong to the tenant," two explanations are given. The owner contends in the first place that the first half of the typewritten sentence is consistent with the printed provisions of the paragraph and that the second half of the typewritten sentence is (1) inconsistent with the printed provisions of the paragraph; (2) inconsistent with the first half of the typewritten sentence; (3) at the most might indicate that if by any chance the commissioners should make any award for the leasehold, the tenant would get it; and (4) that the words "award for the leasehold interest" meant an award for the tenant's fixtures.

Taking the last (No. 4) first, the "tenant's fixtures" might be of two kinds, those that were clearly personalty, removable by him, for which no award is made in a condemnation proceeding, and those that were so attached to the building that they became part of the realty for which an award might be made. But the words "leasehold interest" have no such meaning. They mean the tenant's right to the possession of the property for the term of the lease. People ex rel. United States Rubber Co. v. Knapp, 232 N.Y. 153, at pages 160, 161, 133 N.E. 429. Besides, if the words "leasehold interest" were intended to mean "fixtures attached to the realty," why were not those words used by the parties?

As to the third interpretation claimed for the owner, that the second half of the typewritten sentence was merely to cover the possibility or chance of an award being made for the tenant's term, it should be noted that the expression used is "any award," not "award, if any." And in this respect and many other respects the problem of construction presented in this case differs radically from that involved in Matter of City of New York (Pier Old No. 11, East River) 124 App.Div. 465, 109 N.Y.S. 2, 4. Further, in Pier Old No. 11 Case the lease must have been entirely typewritten.

I have examined the printed record on appeal in that case, and the lease there involved has none of the familiar language of a printed form. Its execution was closely related to the issuance of a revocable permit by the Dock Department for the erection of sheds on this privately owned pier, so that the possibility of a public taking in accordance with the harbor development plan was everpresent and known to the parties. Further, that lease contained a provision "that in case the board of docks or other constituted authority now existing or to be created by law shall take possession of said demised premises the said parties of the first part [the owner] shall not be held liable for any damages whatever sustained by the party of the second part (the tenant)." The covenant of quiet enjoyment in that lease also contained a provision that it was "subject nevertheless to the action of the government of the United States or of the state of New York, of the city of New York or other authority created by them respectively as hereinbefore expressed." And finally the reference in that lease to the tenant's right to receive an award was "and the party of the second part shall receive only such award *if any* as may be made in such proceedings for his interest in and under this lease and also the interest of the party of the second part in the shed or sheds upon said premises." The wording of the lease in the Pier Old No. 11 Case and the other surrounding circumstances were so different from the situation here presented that the decision in that case is in no way controlling.

In respect to the contention (No. 3) that the second half of the typewritten sentence was intended to cover the chance or possibility of an award for the leasehold, it should be noted that the words "any award" used in respect to the leasehold interest are matched by the same words "any award" in relation to the fee interest, so that those words are as strong or effective in the one case as the other. The only difference in the two clauses of the typewritten sentence is that in the clause relating to the award for the fee it is stated that it shall belong "solely" to the landlord. The word "solely" is not used in the provision that the award for the leasehold interest shall belong to the tenant. But that is in no way determinative of the question. The two provisions can be given effect without having one destroy the other, as will be hereinafter discussed.

The second half of the typewritten sentence is repugnant to the printed provision of this twenty-first paragraph if the printed provision is to be construed, as in the owner's contention (No. 1), as so terminating the term of the lease that the tenant is deprived of any award for his leasehold interest. But in the case of such repugnancy, under the decisions above cited, the typewritten provision should prevail over the printed provision and the printed provision may be disregarded.

I see no inconsistency in the two clauses of the typewritten sentence. Effect can be given to both by making an award to the tenant for the value of his leasehold interest and an award to the owner for the value of his fee burdened with the leasehold. Again we have a rule of interpretation that points to such a construction of the typewritten sentence. Section 236 (a) of the Restatement of the Law of Contracts states: "An interpretation which gives a reasonable lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect."

As was stated in Fleischman v. Furgueson, 223 N.Y. 235, 119 N.E. 400, 402: "A court will endeavor to give the construction most equitable to both parties instead of the construction which will give one of them an unfair and unreasonable advantage over the other."

If there were no paragraph at all in the lease relating to the situation that might arise by reason of a taking of the property in a condemnation, then the law would give the tenant an award for his leasehold interest. Any provision that would be in derogation of the tenant's right to such an award should be clear and unambiguous.

Finally, in construing paragraph twenty-first, we should have in mind the fact that paragraph twenty-eighth specifically provided that the landlord might at any time on not less than sixty days' notice in writing terminate the lease, provided that she paid the tenant certain specific sums depending on the year in which such notice was given. Paragraph twenty-eighth was entirely typewritten. These condemnation proceedings were instituted in December, 1935. If the landlord under the twenty-eighth paragraph

of the lease had elected to terminate the lease at that time, she would have been obligated to pay the tenant $22,500. Is it reasonable therefore to assume that the tenant would have been willing to forego any award for his leasehold interest in the event of a public taking supplemented by a notice from the landlord terminating the lease? Is it not more reasonable to assume that the parties intended that, if the lease were terminated on notice from the landlord without a public taking, then the tenant should receive a stipulated sum under paragraph twenty-eighth, and that if the lease were terminated by notice from the landlord with a public taking that then the tenant was not to receive a stipulated sum but was to be limited to the amount of any award for the leasehold interest made in the condemnation proceeding. That is the construction of the lease that appears to me to express the intent of the parties in respect to the tenant's rights on such termination of the lease. It is the fair and equitable interpretation. It gives effect to the provisions contained in the typewritten sentence that the parties added to the printed provision of paragraph twenty-first. It gives effect to the meaning that may properly be gathered from the whole instrument. As was stated in Green County v. Quinlan, 211 U.S. 582, at page 594, 29 S.Ct. 162, 167, 53 L.Ed. 335: "In ascertaining the true meaning of instruments in writing, courts do not confine their attention to single words, phrases, or sentences. The meaning is sought from the whole instrument, viewed in the light of the subject with which it deals."

The valuation of $65,000 placed by the commissioners on the fee of parcel C, unburdened by the leasehold interest, is approved. But so much of the report of the commissioners as denies any award to the tenant Pappas for his leasehold interest in the premises, parcel C, is disapproved, and the matter is returned to the commissioners, with directions that they make an award to the tenant Pappas for the value of his leasehold interest. They may make said award on the evidence of the value of the leasehold already in the record. The disposition of the sum of $12,000 of the award for parcel C shall await the coming in of the commissioners' supplemental report herein.

If the owner, Blanche Frank, and the tenant Pappas wish to stipulate to a value for said leasehold interest of if they wish to stipulate that the court may on the record herein fix the value of said leasehold interest, the requirement that this matter be referred to the commissioners may be dispensed with.