**DAVIS, Federal Agent, etc., v. PRINGLE.**

**In re CHARLES F. BOYD CO., Inc.**

(Circuit Court of Appeals, Fourth Circuit. September 29, 1924.)

No. 2245.

1. **Bankruptcy 349 — Debts due Director General of Railroads were "debts due United States," of character entitled to priority under old statute.**

Debts due to Director General of Railroads, such as demurrage, freight, and storage charges, were "debts due United States," of character given priority by Rev. St. § 3466 (Comp. St. § 6372).

2. **Bankruptcy 349—United States has preference in payment of debts only under conditions mentioned in statute.**

By virtue of Rev. St. § 3466 (Comp. St. § 6372), United States has preference in payment of its debts under any of conditions mentioned in statute, but not in distribution which for any reason does not come within statute.

3. **Bankruptcy 4 — Act intended to cover completely all matters of adjudication, administration, discharge, priorities, and distribution of assets.**

Bankruptcy Act (Comp. St. §§ 9585–9656) was intended to cover completely all matters of adjudication, administration, discharge, priorities, and distribution of assets, and it and rules made under it supplanted and annulled all previous inconsistent statutes and rules of courts of common law and equity.

4. **Bankruptcy 345—United States not "person," within statute concerning priority.**

United States is not "person," within Bankruptcy Act 1898, § 64b(5), being Comp. St. § 9648, relating to priority, in view of section 1 (19), being Comp. St. § 9585(19), defining "persons."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Person.]

5. **Statutes 225¾ — Language taken from another statute should be given same meaning as it had.**

Since Bankruptcy Act 1898, § 64b (5), being Comp. St. § 9648, is taken almost literally

from corresponding subdivision of Bankruptcy Act of 1867, in absence of expression of contrary intention, language should be given same meaning.

**6. Bankruptcy ⊙═⊃349 — Debts due Director General of Railroads held not entitled to priority.**

Under Bankruptcy Act of 1898 (Comp. St. §§ 9585–9656), debts due Director General of Railroads, such as demurrage, freight, and storage charges, though debts due United States, are not entitled to priority, since Rev. St. § 3466 (Comp. St. § 6372), has been superseded.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston, in Bankruptcy; Henry A. Middleton Smith, and Ernest F. Cochran, Judges.

In the matter of the estate of the Charles F. Boyd Company, Inc., bankrupt; E. H. Pringle, trustee. Claims of James C. Davis, Federal Agent, accruing in operation of the Atlantic Coast Line Railroad Company, were denied priority, and he appeals. Affirmed.

Alex Koplin, Gen. Atty. for U. S. Railroad Administration, of Washington, D. C. (Simeon Hyde, of Charleston, S. C., Lambert McAllister, of Washington, D. C., and Rutledge, Hyde, Mann & Figg, of Charleston, S. C., on the brief), for appellant.

N. B. Barnwell, of Charleston, S. C. (F. H. Horlbeck, Whaley, Barnwell & Grimball, and Mitchell & Horlbeck, all of Charleston, S. C., on the brief), for appellee.

Before WOODS and WADDILL, Circuit Judges, and WEBB, District Judge.

WOODS, Circuit Judge. Charles F. Boyd Company, Inc., was adjudged bankrupt on August 20, 1920. The Director General on February 3, 1921, filed claims amounting to $2,213.70 for freight, storage, and demurrage accruing to the Atlantic Coast Line Railroad Company during federal control. Afterwards on February 27, 1922, the Director General by petition claimed priority over general creditors in the distribution of the assets. No point seems to have been made before the referee or the District Court that the claim for priority was not properly set up. If demurrage, freight, and storage charges in favor of the Director General are debts due to the United States, and as such are entitled to priority, the priority was inherent in the debts, and required recognition by the court when called to its attention at any time before distribution of the assets. The referee reported against the claim of priority, and the District Judge confirmed his report.

[1] We are unable to agree with the referee and the District Judge that the debts due to the Director General were not debts due to the United States of the character given priority by section 3466 of the Revised Statutes (Comp. St. § 6372). The Supreme Court has decided otherwise. In Du Pont v. Davis (April 7, 1924) 264 U. S. 456, 44 S. Ct. 364, 68 L. Ed. 788, the court says: "In taking over and operating the railroad systems of the country the United States did so in its sovereign capacity, as a war measure, 'under a right in the nature of eminent domain.' North Carolina R. R. Co. v. Lee, 260 U. S. 16; Missouri Pacific R. R. Co. v. Ault, 256 U. S. 554; Northern Pacific R. R. Co. v. North Dakota, 250 U. S. 135; In re Tidewater Coal Exchange, 280 F. 648, 649. And it may not be held to have waived any sovereign right or privilege unless plainly so provided. Moneys and other property derived from the operation of the carriers during federal control, as we have seen, are the property of the United States. Section 12, 40 Stat. 457. An action by the Director General to recover upon a liability arising out of such control is an action on behalf of the United States in its governmental capacity. Ches. & Del. Canal Co. v. United States, 250 U. S. 123, 126; In re Tidewater Coal Exchange, supra." Davis v. Corona Coal Co., 265 U. S. 219, 44 S. Ct. 552, 68 L. Ed. 987, decided by the Supreme Court May 26, 1924.

[2] The question of priority of debts, other than taxes, owing to the United States in the distribution of bankrupt estates is one of difficulty. It is not to be decided on the general doctrine of priority of debts due the sovereign, for the Congress has undertaken to cover the whole subject by statutes. The act of 1797 (R. S. § 3466 [Comp. St. § 6372]), provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

By virtue of this statute the United States

had a preference in the payment of its debts under any of the conditions mentioned in the statute, but not in a distribution which for any reason did not come within the statute. United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638. In that case the state, setting up a claim in behalf of the depositors of a bank under authority of a state statute, was held to have priority over debts due the United States, on the express ground that the bank assets in the hands of a state commission did not present a condition under which the statute gave the United States priority.

The bankruptcy statute of 1867 (R. S. § 5101) provided the following order of priorities:

"In the order for a dividend, the following claims shall be entitled to priority, and to be first paid in full in the following order:

"First. The fees, costs, and expenses of suits, and of the several proceedings in bankruptcy under this title, and for the custody of property, as herein provided.

"Second. All debts due to the United States, and all taxes and assessments under the laws thereof.

"Third. All debts due to the state in which the proceedings in bankruptcy are pending, and all taxes and assessments made under the laws thereof.

"Fourth. Wages due to any operative, clerk, or house servant, to an amount not exceeding fifty dollars, for labor performed within six months next preceding the first publication of the notice of proceedings in bankruptcy.

"Fifth. All debts due to any persons, who, by the laws of the United States, are, or may be, entitled to a priority, in like manner as if the provisions of this title had not been adopted. But nothing contained in this title shall interfere with the assessment and collection of taxes by the authority of the United States or any state."

Thus not only taxes, but all debts due the United States, were given priority over all other liabilities, except costs and expenses of bankruptcy proceedings. In other words the priority given all debts due to the United States by R. S. § 3466, was sanctioned and re-enacted by the bankruptcy statute of 1867 (14 Stat. 517). As the court said in Lewis, Trustee v. United States, 92 U. S. 618, 23 L. Ed. 513, the statute contained no qualification of priority of the United States, and the court could not interpolate one.

[3] What limitation, if any, in the distri-bution of bankrupt assets, did the subsequent Bankruptcy Act of 1898 (Comp. St. §§ 9585–9656) put upon the general priority given the United States under the previous statutes? The act of 1898 was intended to cover completely all matters of adjudication, administration, discharge, priorities, and distribution of assets. The statute and rules made under it supplanted and annulled all previous inconsistent statutes and rules of the courts of common law and equity. United States Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, 217, 32 S. Ct. 620, 56 L. Ed. 1055. "The act takes into consideration, we think, the whole range of indebtedness of the bankrupt, national, state and individual, and assigns the order of payment." Guarantee Co. v. Title Guaranty Co., 224 U. S. 152, 160, 32 S. Ct. 457, 460 (56 L. Ed. 706).

[4] The statute provides the following order of priority:

(a) The court shall order the trustee to pay all taxes legally due to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors.

(b) Debts to have priority, except as herein provided, and to be paid in full, and the order of payment shall be: "(4) wages due to workmen, clerks, traveling or city salesmen or servants, which have been earned within three months before the date of the commencement of the proceedings; and (5) debts owing to any person who by the laws of the states or the United States is entitled to priority."

The Congress thus took from debts due the United States, other than taxes, the priority given such debts along with taxes by the act of 1867 by leaving out of the act of 1898 other debts in providing for priority of taxes. This seems too clear for discussion; and so the court decided in Guarantee Co. v. Title Guaranty Co., supra. There it was held that the act of 1797, R. S. § 3466, the bankruptcy statute of 1867 (R. S. 5101) and the bankruptcy statute of 1898 must be considered in pari materia, and that in bankruptcy proceedings the act of 1898 superseded section 3466, R. S., so far as the two statutes were inconsistent.

It is argued, however, that priority is given the United States next in order to debts for wages, by section 64b (5), being Comp. St. § 9648: "Debts owing to any person who by the laws of the states or the United States is entitled to priority." This grade of priority is not given to the United States by virtue of R. S. § 3466, unless

the United States falls under the designation of "any person." The statute itself gives this definition: "(19) 'Persons' shall include corporations, except where otherwise specified, and officers, partnerships, and women, and when used with reference to the commission of acts which are herein forbidden shall include persons who are participants in the forbidden acts, and the agents, officers, and members of the board of directors or trustees, or other similar controlling bodies of corporations." Section 1, cl. (19), Bankruptcy Act of 1898 (Comp. St. § 9585 [19]).

The failure to include the United States and the states in the definition could not have been inadvertent. The United States and the several states of the Union are not persons, and are not commonly thought of as persons, and if it had been intended that "persons" should have such a comprehensive and unusual meaning as to include them, the framers of the definition would have said so.

Again, when the Congress had already dealt with claims of the United States under the name of the United States, and had deliberately limited its priority to taxes, it is hardly reasonable to attribute to the Congress an intention to deal again with the claims of the United States and include them in a provision relating to debts of "any person."

[5] It will be noticed further that the language of subdivision (5), section 64b, of the act of 1898 is taken almost literally from the corresponding subdivision of the Bankruptcy Act of 1867, and in the absence of the expression of a contrary intention the language should be held to have the same meaning in the latter statute as in the former from which it was taken. In the act of 1867 "persons" in subdivision (5), R. S. § 5101, could not have been intended to include the United States because all the debts due to the United States had been provided for and given priority over all other debts of any kind by subdivision (2) of the same section.

The record of the passage of the Bankruptcy Act of 1898 is significant. The bill as passed by the Senate contained the following priorities:

"Sec. 9. That the following debts shall have preference in the order named, over other debts in the distribution of the estate of the bankrupt, to wit:

"First. Debts due to servants or laborers employed by the bankrupt. * * *

"Second. Taxes or revenues due the United States.

"Third. Taxes due any state or territory or the District of Columbia.

"Fourth. Taxes due any county. * * *

"But none of such debts shall be recognized or paid unless duly proved and allowed as prescribed in reference to other debts and claims against the bankrupt."

All that followed the enacting clause of the Senate Bill was struck out by the committee of the House, and the House Bill with about 80 amendments was substituted. The original House Bill, as introduced and referred to the committee, contained the following as to priorities:

"Sec. 64. Debts which have priority: (a) Debts owing to the United States, a state, a county, a parish, or a municipality, after being proved and allowed, shall have priority only in the event and to the extent that they constitute a lien upon the property of the estate."

The committee changed this section to the form in which it was enacted in the act of 1898. Thus it appears that after consideration of the question the Congress struck out a provision for priorities of all lien debts owing to the United States, the states, and municipalities, and substituted for it a provision in the act of 1898 limiting the priority of the United States, the states and municipalities to taxes.

[6] As it seems to us, the analysis of the statutes and the record of the passage of the act of 1898 require the holding that the law-making power of the United States has limited its priority in bankruptcy to its claim for taxes. This conclusion is opposed to the high authority of the Circuit Court of Appeals of the Second Circuit (In re Tidewater Coal Exchange, 280 F. 648, 650), and of the Eighth Circuit (In re Western Implement Co., 171 F. 81, 96 C. C. A. 185). In the view of these courts the United States and states are persons within the meaning of subdivision (5) of section 64b of the Bankruptcy Act of 1898, and therefore entitled to priority under R. S. § 3466, over general creditors after payment of wages. In the Tidewater Case the court cited as authority for the holding in Re Hibner Oil Co., 264 F. 667, 14 A. L. R. 629. But the Circuit Court of Appeals of the Seventh Circuit in the latter case was called on to discuss and decide only the question whether a debt due to the Director General was a debt due to the United States. The court did not discuss the priority of a debt due to the United States, for in the opinion it is

stated the priority of such a debt was conceded.

Judge Rose, in the District Court of Maryland, expressed assent to these authorities (In re Atlantic, G. & P. S. S. Co., 289 F. 146), but as the court held there was no debt to the United States the point was not really involved. The state of Minnesota was held to be "a person," within the meaning of section 64b of the Bankruptcy Act of 1898, by Judge Purdy in the District Court for that state (In re Western Implement Co., 166 F. 578), and the judgment was affirmed by the Circuit Court · of Appeals of the Eighth Circuit, for the reasons stated by the District Judge (171 F. 81). United States v. National Surety Co., 254 U. S. 73, 41 S. Ct. 29, 65 L. Ed. 143, does not decide the question. There the priority of debts due the United States over general creditors seems to have been conceded by the parties, for the court is careful to say that the sole question presented was whether in the distribution of a bankrupt estate the United States has priority over a surety company claiming subrogation to the rights of the United States. Marshall, Receiver, v. People, 254 U. S. 380, 41 S. Ct. 143, United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638, Davis, Director General, v. Pullen (C. C. A. First Circuit) 277 F. 650, and Davis, Director General, v. Miller-Link Lumber Co., (C. C. A. Fifth Circuit) 296 F. 649, are not authorities for either side, for the question of the right to priority arose in receivership proceedings, and therefore did not involve the meaning of the provisions of section 64 of the Bankruptcy Act of 1898 fixing priority.

We find no binding authority opposed to the conclusion that the United States has no priority in bankruptcy except for taxes. On the contrary, we venture to think it is supported by the reasoning and conclusion of the court in Guarantee Co. v. Title Guaranty Company, 224 U. S. 152, 32 S. Ct. 457, 56 L. Ed. 706. In Sloan Shipyards v. United States Fleet Corporation, 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762, the majority of the court denied priority in a bankruptcy proceeding set up by the Emergency Fleet Corporation on the ground that, even if the United States would be entitled to priority, the Emergency Fleet Corporation was a separate entity, and its claim for priority could not be sustained. The majority intimated no opinion on the question whether a debt to the United States other than for taxes would have been entitled to priority. The Chief Justice and Justices Van Devan-

ter and Clarke dissented from the reasoning of the majority, but as to the claim to priority concurred in the result in this language used by the Chief Justice: "As to the preference claimed against a bankrupt in No. 526 by the Fleet Corporation, I concur in the conclusion of the court that it cannot be allowed under the statute as to preferences in bankruptcy, because I do not think it extends to claims of the United States, except those for taxes."

For the reasons stated, and on the authority of Guarantee Co. v. Title Guaranty Company, supra, and the views expressed by the Chief Justice and Justices Van Devanter and Clarke above quoted, we hold that, in bankruptcy, debts due to the United States other than for taxes have no priority over general creditors. No sound principle of public policy can be invoked in support of preference to the federal government and to the states over citizens in the collection of ordinary debts. On the contrary, the contractual operations of the federal government and of the states have become so extensive and so involved with the business of private citizens that priority to the federal government and to the states, except for taxes, would operate as an oppressive hardship on other creditors of bankrupts.

Affirmed.