UNITED STATES v. 150.29 ACRES OF LAND IN MILWAUKEE COUNTY, WIS., et al.

GAYLORD CONTAINER CORPORATION v. ELINE'S Inc.

No. 8577.

Circuit Court of Appeals, Seventh Circuit.

March 5, 1945.

Rehearing Denied March 22, 1945.

Writ of Certiorari Denied June 18, 1945.

See 65 S.Ct. 1576.

34

See, also 135 F.2d 878.

James D. Shaw, Francis H. Parson, Shaw, Muskat & Paulsen, and Backus & Parson, all of Milwaukee, Wis., for appellant.

Malcolm K. Whyte, Victor M. Harding, Jr., and Gerald P. Hayes, all of Milwaukee, Wis., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

The United States Government has by condemnation acquired the fee to 150.29 acres of land, more or less, in Milwaukee County, Wisconsin, together with the improvements thereon. 91.20 acres of this land were owned by Eline's Inc. (hereinafter called Eline), and were improved by a large group of buildings. Various portions of the property were occupied by tenants of Eline under numerous leases, but we are in this proceeding concerned only with the lessee Gaylord Container Corporation (hereinafter called Gaylord). The Gaylord lease was executed on September 26, 1938, and covered approximately 62,420 square feet of floor space located in a portion of the first and second floors of buildings 8 and 9 of the Eline property. The lease became effective on January 1,

1939, and was for a term of five years with an option in Gaylord for an additional five years. The annual rental was $15,000.

The United States filed its petition for condemnation in this cause on April 20, 1942, and on the same date an order was entered by the District Court giving the United States immediate possession of the unoccupied portion of said premises, and giving possession of the balance of said premises on April 30, 1942. Later negotiations were had between the government and certain of the tenants, including Gaylord, under which Gaylord was permitted to occupy the premises in question until July 1, 1942. On June 16, 1942, Eline executed a written option to the United States government for the purchase of the entire property at a stipulated price of $2,290,000. It was stipulated in the option agreement that on payment of this sum by the government, Eline would execute and deliver to the United States a special warranty deed to the property. It was also provided in the option that if the United States did not wish to take title by deed from Eline the option agreement might be filed in the condemnation proceeding and the option price of $2,290,000 should be the compensation to be awarded for the entire property. The government filed the option agreement in the condemnation proceeding and perfected their title to the property under the condemnation proceeding. On November 10, 1942, the government filed a declaration of taking and paid the sum of $2,290,000 into the registry of the court. The present proceeding is a contest between Eline and Gaylord to determine the fair compensation to be paid to Gaylord for its leasehold interest, it being conceded by Eline that whatever sum is to be paid to Gaylord must be deducted from the entire sum paid by the government into court.

Eline appeals from a judgment of the District Court rendered upon a jury's verdict, finding the value of the Gaylord lease to be $111,792. At a previous trial by the District Court, the jury had awarded Gaylord $179,000, but the District Court allowed a new trial for various reasons, among others that the verdict was excessive. The principal questions on this appeal involve the construction of Clause 13,[1] referred to as the Condemna-

1 " * * * Lessee further agrees that if at any time during the term of this lease the said premises or any part thereof shall be acquired or condemned and/or purchased by any municipality or political subdivision of the state wherein said prem-

tion Clause, and Clause 77,[2] known as the Sale Clause of the Eline-Gaylord lease. It is the contention of Eline that the condemnation proceeding here involved is a condemnation within the meaning of Clause 13, and that under the provisions of such clause the lessor had the privilege of cancelling and terminating the lease in question by giving to the lessee 30 days written notice, and that at most the question of value of the Gaylord leasehold would be limited to a thirty day period. Eline contends that it was clearly the intention of the parties that the condemnation proceeding in this clause referred to included condemnation by the United States and the State of Wisconsin, and that any other construction would be entirely unreasonable. They further contend that the words "municipality or subdivision of the State wherein said premises are located or by any company or corporation lawfully qualified to exercise the right of eminent domain," having reference to certain minor creations of the sovereign must be read to include the sovereign itself for the reason that, strictly speaking, property can be condemned only by the sovereign—state or nation—or some corporate entity lawfully authorized by it. It would be unreasonable, so they say, to suppose that the parties intended to provide against the contingency of condemnation by a subordinate entity without at the same time intending to cover condemnation by the sovereign itself. The argument further goes that if the language in the first part of the paragraph be deemed not to include condemnation by the United States government, still the language "or by any company or corporation" would cover the United States, as the United States has in some instances been held to be a corporate entity. The District Court took the position that Clause

13 did not apply to condemnation by the United States government and with this construction we agree. The language is too plain to permit us to interpolate the United States as one intended to be covered by this provision. True, the parties might well have included the United States, and we might speculate that it was their intention so to do, but it would be pure speculation and unjustified from the language used. The United States has in some instances been held to be a "body politic" and "body corporate," but we do not think the cases justify the holding that in this instance it was the intention of the parties that the United States be covered by the word "corporation." The sequence of the words "company or corporation" is somewhat significant—they come at the end of a catalogue of entities, commencing with "any municipality." It is unlikely that in drafting a lease the parties would, if they intended to include the United States, place it at the end of the list, and there refer to it as a "company or corporation." See United States v. Cooper Corporation, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071; Davis v. Pringle, 4 Cir., 1 F.2d 860, affirmed 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974.

Clause 77 of the lease, sometimes called the Sale Clause, reserves to Eline in the event of a sale of the leased premises the right to cancel and terminate the lease in question at any time after December 31, 1941, by giving the lessee not less than six months written notice and paying to the lessee the sum of $40,000. Eline argues in the alternative that if Clause 13 is not held applicable, then Clause 77 comes into operation and that the condemnation proceeding in question amounted to a sale of the leased premises and that in any event Gay-

ises are located, or by any company or corporation lawfully qualified to exercise the right of eminent domain the lessor shall have the right to cancel and terminate this lease by giving to lessee not less than 30 days written notice of such intention to cancel * * *."

2 "It is further understood and agreed by and between the parties hereto that in the event of a sale of the within leased premises or of the Eline plant property or a portion thereof (of which the within leased premises are a part), lessor reserves and has the right to cancel and terminate this lease to take effect at any time after December 31, 1941, by lessor giving to lessee not less than six (6) months' writ-

ten notice of such intention so to cancel and terminate. In the event the within lease is cancelled and terminated pursuant to the provisions contained in this paragraph and the lessee is required to vacate said premises during the twenty-six (26) month period beginning January 1, 1942, lessee shall receive from lessor the sum of Forty Thousand Dollars ($40,000.00), it being understood, however, that the lessee shall have vacated promptly pursuant to notice and shall have kept, performed, and fulfilled all of the terms, covenants and conditions in the within lease on the part of the lessee to be kept, performed and fulfilled."

lord would be entitled to receive only the sum of $40,000 plus the valuation of its leasehold for a six months period (with due allowance for the fact that they did not vacate until July 1, 1942). The question specifically then is: Did this Sale Clause if given its proper construction in relation to other provisions of the lease, come into operation under the facts of the condemnation here existing, and by its terms define the rights of the parties? Appellant cites a number of very respectable authorities[3] in which it has been held that a condemnation proceeding does have the effect of a sale. Indeed a proceeding to condemn is a proceeding to bring about a forced and compulsory sale of property by its owner. Standing alone and unaffected by other provisions of the lease in question, the construction placed on this clause by appellant might reasonably be accepted; but under the circumstances with which we are here confronted, the matter is not that simple. The job at hand requires a construction of the lease as a whole and an interpretation of the purposes of the parties to the lease. It must be considered that the parties have in Clause 13 dealt with the subject of condemnation and that when they reached Clause 77 and sought to express themselves upon the subject of a sale they were no longer thinking in terms of a sale brought about by condemnation. The subject of condemnation had been exhausted in an earlier paragraph, and it seems to us that the sale now being dealt with concerned only a voluntary sale. The reasoning throughout those cases holding that a condemnation amounts to a sale is based upon the fact that where the lessee has agreed to relinquish possession of the leasehold property in the event of a transfer of title, it makes no difference whether the transfer be effected through voluntary or involuntary sale, the important factor is that the lessee has agreed to a termination of the lease, if the property be conveyed under any circumstances. In such cases to hold that a condemnation proceeding amounts to a sale does no violence to the intentions of the parties. In our case the sale clause could not by its terms come into operation until December 31, 1941, at which time the lease had been in operation for a period of two years. How can we now say that it was reasonably within the intention of the parties that condemnation was to be covered by the language of the Sale Clause when it was operative only a portion of the time in which condemnation might have been brought. Condemnation could have followed the day after the lease was executed and nobody could have asserted that the Sale Clause was applicable at that time, because it had not yet come into operation. No postponement of the date of cancellation to December 31, 1941, could have been demanded under a condemnation proceeding, by the government; indeed, the government usually files its petition for condemnation and asks for an order of immediate possession as they did in the present instance. We think the cases referred to by appellant are not authority for the proposition that where, as here, the lease includes both a condemnation and a sale clause with inconsistent terms, that both or either will apply in the event of condemnation. The cardinal principle of construction of a written instrument is to seek out the meaning and intention of the parties as it may be disclosed within the terms of the instrument. We think the parties had exhausted the subject of condemnation in Clause 13 and that it was clearly the intention of the parties that the Sale Clause refer only to a private sale by the lessor, and not to a forced sale under a condemnation proceeding. This was the position of the trial court, yet he did permit the jury to consider this clause in the lease in connection with the effect that it might have upon the valuation to be placed upon Gaylord's leasehold. We think this was proper under the circumstances.

■■ Neither do we think that the option agreement entered into between Eline and the Government in the course of the condemnation proceedings had the effect of branding the transaction a "sale". Special reference is made to paragraph 6 of this option agreement,[4] wherein it is seen that

[3] Fletcher v. Peck, 6 Cranch 87, 3 L. Ed. 162; American Creameries Co. v. Armour & Co., 149 Wash. 690, 271 P. 896; Vandermulen v. Vandermulen, 108 N.Y. 195, 15 N.E. 383; Jackson v. State, 213 N.Y. 34, 106 N.E. 758; Atlanta, K. & N. Railway Co. v. Southern Railway Co., 6 Cir., 131 F. 657; United States v. Certain Parcels of Land, D.C., 51 F.Supp. 811; Charleston & W. C. Railway Co. v. Hughes, 105 Ga. 1, 30 S.E. 972, 70 Am. St.Rep. 17.

[4] "(6) The Vendor agrees that in the event the United States determines, notwithstanding the prior exercise of this offer, the title to said land or any portion

the United States had the right to acquire title to the premises in question either by conveyance or by decree under the condemnation proceedings. They elected to pursue the latter course. This Court held on a previous consideration of another angle of this same proceeding that the United States took title through condemnation. Eline's, Inc., v. Town of Milwaukee, 7 Cir., 135 F.2d 878. The trial Court excluded the option agreement from the consideration of the jury and we think this ruling was correct as it shed no light upon the jury's problem.

 Other questions raised by appellant relate to rulings upon evidence and the proper measure of damages. Special emphasis is placed upon the alleged error of the District Court in the receipt of Exhibit 32, a detailed statement of the cost of certain improvements placed by Gaylord upon the leased premises, together with a credit for those items removed and a resultant column labelled "loss". We agree with appellant that, unexplained, this exhibit would have indicated an erroneous basis of valuation of the leasehold and would undoubtedly have been misleading to the jury. The exhibit was received with reluctance by the trial court who exercised great caution in explaining its purpose to the jury. In his instructions to the jury on this subject the trial court said:

"The improvements made on the leased premises, such as installing fixtures—items which were to be left on the premises on the termination of the lease—also installation costs of machinery and equipment, are not to be compensated for except as they may improve the value of the lease and increase the reasonable rental value for the balance of the term. To that extent only, can such installations and improvements be considered by you. The rule may be stated: The value of the improvements made by the lessee which are to become the property of the lessor at the end of the term, and installation costs which would be of little or no value to the lessor, should be included to the extent only to which they enhance the market value of the leasehold for the balance of the term.

"Many references were made by counsel to Exhibit 32. You will recall that I stated that I received the exhibit into evidence with some reluctance because I feared it might be confusing to the jury. I instructed you that the exhibit should be received with great caution. I told you that the items of cost there listed were not in themselves elements of damage for which you can make allowance. Those items are not to be considered by you except as they may increase or enhance the rental value for the balance of the term. I emphasize rental value. The fact that Gaylord may have considered such expenditures advisable for its own purposes when made does not necessarily mean that the rental value for the balance of the lease was increased by exactly that sum. It is for you to determine whether such rental value was increased to any extent, and to what extent."

Such instruction abounds in caution and clarity and it would be unreasonable to suppose that an ordinarily intelligent jury would fail to understand the purpose of this exhibit. Under the circumstances and in the light of the instructions of the trial court we do not feel that the exhibit was misleading or that it was error to receive it.

This was a difficult case to try to a jury, due in part to the close questions involved as to the measure of damages to be awarded to the holder of a leasehold interest, intensified to a great extent by the decision of this Court in the case of General Motors Corporation v. United States, 7 Cir., Feb. 11, 1944, 140 F.2d 873, in which we departed to some extent from previously announced doctrines and which holding of ours had not at the time of the trial of the instant case in the District Court, (March, 1944) been reviewed by the Supreme Court. The Supreme Court has since announced its decision on review (January 8, 1945, 65 S.Ct. 357, 361) and with slight modifications affirmed the conclusions reached by us. We specifically refer to the opinion of the Supreme Court

---

thereof or any interest therein, to be unsatisfactory for the purchase by deed or for any other reason, the United States, at its election, may acquire the same by condemnation with or without a declaration of taking; and in that event the Vendor agrees to cooperate with the United States in the prosecution of such proceedings, and the Vendor agrees that this option shall constitute a stipulation which may be filed in such proceedings and shall be final and conclusive evidence of the true value of the whole of said property and of the proper award to be made in such proceedings."

as well as that of our own Court for a detailed review of previous decisions upon the question of measure of damages in condemnation proceedings. We had held in that case under the facts then before us that the holder of a leasehold interest, a portion of which was being taken under condemnation by the Government, was entitled to prove as an element of "just compensation" the actual and necessary expense directly incurred in vacating the property condemned. We also expressed the view that under the circumstances of that case "fair rental value" was not the equivalent of "just compensation" as that term is used in the Fifth Amendment, and that just compensation required a consideration of the expense to which the tenant was put in demolishing and removing equipment it had installed in the leased premises. The Supreme Court in its opinion says: " * * * Some of the elements which would certainly and directly affect the market price agreed upon by a tenant and a sublessee in such an extraordinary and unusual transaction would be the reasonable cost of moving out the property stored and preparing the space for occupancy by the subtenant. That cost would include labor, materials, and transportation. And it might also include the storage of goods against their sale or the cost of their return to the leased premises. *Such items may be proved, not as independent items of damage but to aid in the determination of what would be the usual—the market—price which would be asked and paid for such temporary occupancy of the building then in use under a long term lease.* (Emphasis ours.) The respondent offered detailed proof of amounts actually and necessarily paid for these purposes. We think that the proof should have been received for the purpose and with the limitation indicated. Proof of such costs as affecting the market value is to be distinguished from proof of value peculiar to the respondent, or the value of good-will or of injury to the business of the respondent which, in this case, as in the case of the condemnation of a fee, must be excluded from the reckoning."

The instructions of the trial court in the instant case clearly define the theory of valuation adopted by the District Court and upon which the case was tried. Among other things he told the jury: " * * * In determining just compensation * * * you will be required to determine the fair market value of the leasehold

on July 1, 1942. * * * In other words, taking all of the various elements into consideration as has been shown by the evidence, you will decide what the fair market value of the lease is for the balance of the term from July 1, 1942, and deduct therefrom the amount of rent payable and other obligations of the tenant. * * * Market value is what a willing buyer would pay in cash to a willing seller * * *. This rent may be the same, or it may be less, or it may be more than the rents fixed in the lease * * *. The tenant was entitled to the use and enjoyment of the premises for the highest and best use to which it was adapted. * * * No increase in value should be allowed because of the fact that this condemnation proceeding was pending."

The Court was trying this case for the second time and devoted much care and patience to the end that the jury might have the correct measure of damages in its deliberations. We think the Court properly instructed the jury and evidenced considerable perspicuity in determining the correct measure of damages in view of the then holding of our Court in the General Motors case and the holding of the Supreme Court yet to come. The instant case is not completely parallel with the General Motors case, and not all that is said in that opinion is applicable to the facts here, but in so far as applicable we think the principles there enunciated were properly applied.

We have carefully reviewed the other assignments of error not here discussed but find no reversible error. The judgment is affirmed.

Affirmed.

EVANS, Circuit Judge (dissenting).

I am forced, although reluctantly, to dissent from the majority opinion. My difference with the majority arises over the scope of the two clauses which measure the lessor's liability in case the property covered by the lease was taken by condemnation proceedings (clause 13, majority, opinion, footnote 1) or sold during the life of the lease (see clause 77, majority opinion, footnote 2).

It seems quite clear that the parties to the lease covered, or at least attempted to cover, a situation which would arise in case the property was (a) taken through condemnation proceedings by certain designated parties, or (b) in case the property

was sold and the lessor exercised its reserved right to cancel and terminate the lease. In the latter case, it was agreed that the lessor should pay lessee, $40,000.

I agree with the majority that clause 13, the condemnation clause, does not apply because the condemnation proceedings were not by one of the agencies named in said clause. I also agree that the sales clause (77) would not apply to a transfer of said property if the transfer were covered by clause 13.

There is the remaining situation where the property is taken through condemnation proceedings, though not the condemnation proceedings covered by clause 13, because the condemnor is not one of the parties designated in said clause. In such a situation it seems unavoidable that Clause 77 applies, for a transfer through condemnation is a sale (see majority opinion for cases so holding).

This conclusion seems the rational one to be drawn from the entire agreement. We must assume that both parties were desirous of making a lease of this property, the rental and renewal provisions of which were fixed and agreed upon. Also, it is apparent the lessor desired to reserve the right to cancel and terminate the lease in case the municipality or other authorized and designated agents condemned said property. Also reserved was the lessor's right to cancellation in case the property was sold. If a termination of the lease occurred, it was agreed the lessee should receive a money compensation.

It seems to the writer, that the parties meant to cover, and did cover, all cases where the transfer of property occurred and a termination or cancellation of the lease took place. The two provisions were complementary and meant to exhaustively cover the lessor's divestment of interest in the property. The price which the lessee was to receive was fixed in each case. It so happened there was a transfer which did not fall under the condemnation clause because this clause was restricted in its application. It did come within transfer by sale provision which limited lessee's recovery to $40,000.

My reluctance in expressing this dissent is due to the reasons very persuasively expressed in the majority opinion. However, I am convinced that the parties to this lease agreed that the sum of $40,000 was to be the liquidated damages which were to be paid to the lessee in the case of a sale by the lessor and a forced vacation of the premises by the lessee. In view of the agreement of the parties, the court may not allow a recovery in excess of the amount fixed and agreed upon by them.