## UNITED STATES v. 21 ACRES OF LAND, MORE OR LESS, Etc., et al.

### No. 3752-H.

District Court, S. D. California, Central Division.

June 30, 1945.

Irl D. Brett and Thomas J. Clark, both of Los Angeles, Cal., for the United States.

John L. Mace, of Los Angeles, Cal., for defendants lessors.

Raymond Haun, of Los Angeles, Cal., and Julien Francis Goux, of Santa Barbara, Cal., for lessee.

HOLLZER, District Judge.

This is a suit in eminent domain. The Government is here acquiring an estate in certain real and personal property for a term of years beginning July 10, 1944, originally terminating June 30, 1945, and extendable for yearly periods thereafter during the existing national emergency at the Government's election, notice of which election must be filed herein at least thirty days prior to the end of the term taken, or subsequent extensions thereof. There is also sought to be taken the right to remove within a reasonable time after expiration of the term or extensions thereof all improvements constructed by or for the Government. To date, the Government has elected to extend the term to June 30, 1946.

The property involved herein consists of certain lands situated in El Montecito, Santa Barbara County, California, together with the improvements thereon, including a furnished hotel known as "Miramar Hotel and Bungalows". Prior to the commencement of this suit the property in question had been leased by the owners (two of the defendants herein) for a term of years beginning December 15, 1943, and ending December 31, 1948, to another of the defendants. By the provisions of said lease the tenant is granted the option to renew the same for an additional term of five years.

Said lease requires the tenant to pay as rent certain percentages of the gross business done on the demised premises, and in any event to pay a minimum rental of $18,000 per annum. Contemporaneously with the execution of said lease and as a part of the consideration therefor, the lessee deposited the sum of $20,000 in a specified bank, it being provided in paragraph six of said lease that the parties thereto might jointly draw upon said deposit to defray the cost of making permanent improvements upon the demised premises, said improvements to become the property of the lessors, it being understood that any portion of said deposit not used for improvements would become the property of the owners in the event the latter did not sell said premises.

Paragraph Ten of said lease provides as follows: "Ten: Condemnation. The Lessee has heretofore been informed that the State of California has heretofore acquired from Lessors, by deed recorded in Book 552, page 275, Official Records of Santa Barbara County, California, and is the owner of a strip of land adjoining U. S. Highway 101 which is presently being used by Lessors for hotel purposes but which may ultimately be put to highway uses by the State of California. In the event the State of California or the County of Santa Barbara or any other public body shall by condemnation acquire any additional portion of said leased premises for highway or other public purpose, the amount of the award in any such condemnation suit shall belong solely to the Lessors, but Lessors shall pay any and all assessments levied in any such condemnation proceeding. In the event any such condemnation suit shall include any buildings upon said leased premises, said Lessors, at their sole cost and expense, shall relocate the same upon said leased premises in some place mutually agreeable. Further in this connection, should the effect of such condemnation be such as to reduce the rentable rooms in said hotel by fifty (50) per cent, or to preclude the subsequent use of the beach forming part of the leased premises, then either party to this lease may terminate the same on thirty (30) days' written notice to the other."

The owners of the property have filed an answer alleging, among other matters, that by reason of the provisions of said paragraph Ten all sums to be awarded as compensation herein belong to them and further alleging that subsequent to the commencement of the instant suit they served upon the lessee thirty (30) days' written notice of the termination of said lease, because of the condemnation of the demised premises as pleaded in the complaint and said answer, and also alleging that by reason thereof said lease terminated on September 10, 1944.

In an answer filed by the lessee it is alleged, among other matters, that pursuant to the terms of said lease he was in possession of the property involved until the Government evicted him and took possession of same, also that said lease has not been terminated by reason of the Government's taking possession thereof, nor by virtue of any of the provisions of said lease and that, subject to the Government's temporary right of occupancy upon payment of just compensation to said lessee, the latter is entitled to the full enjoyment of said property, and that the owners of the fee have no right to the compensation to be awarded herein, but that the entire amount thereof belongs to said lessee.

A second issue has been raised herein by reason of the fact that the Government has demanded that the cause be tried before a jury, while the owners and the lessee have waived a jury trial and have joined in opposing the Government's demand.

Briefs have been filed by counsel representing the respective litigants and extended oral argument has been heard. The many cases cited and discussed in the briefs and at the oral argument unmistakably demonstrate the industry and the painstaking care with which all counsel have attacked the issues requiring determination. We shall consider, first, the question raised by the conflicting claims of the owners of the fee and the lessee.

Counsel for the owners call particular attention to the hereinafter quoted second sentence and also the concluding sentence found in the aforementioned paragraph Ten of the lease, to-wit: "* * * In the event the State of California or the County of Santa Barbara or any other public body shall by condemnation acquire any additional portion of said leased premises for highway or other public purpose, the amount of the award in any such condemnation suit shall belong solely to the Lessors, but Lessors shall pay any and all assessments levied in any such condemnation proceeding. * * * Further in this connection, should the effect of such con-

demnation be such as to reduce the rentable rooms in said hotel by fifty (50) per cent., or to preclude the subsequent use of the beach forming part of the leased premises, then either party to this lease may terminate the same on thirty (30) days' written notice to the other."

The owners contend that by reason of the first of the two sentences just quoted, the entire award payable in this suit must be paid to the owners and that the tenant has no interest therein. It is further asserted that relying upon the concluding sentence quoted, the owners on August 11, 1944 served upon the tenant thirty (30) days' written notice of the termination of the lease by reason of the condemnation and that, therefore, such lease became terminated as of September 11, 1944. In this connection it is argued that the first sentence of said paragraph Ten refers entirely to a past event and has no application to the rights of the parties here involved, but that the sentence immediately following refers to future condemnations and prescribes that if any other public body, as for example the United States, shall condemn for any public purpose the amount of the award shall belong solely to the owners.

Likewise, it is insisted that the cases cited establish that when a lease provides for termination upon condemnation, either automatic or by specified notice, the condemnation terminates the lease and the lessee is entitled to no part of the award. Here, it is insisted, the landlord's position is further fortified by the provision in the lease to the effect that the entire award shall belong to him. Accordingly counsel for the owners contend that, since the United States is a public body and since the taking herein is for a public purpose, the rights of the parties to the lease are fixed by the provisions of paragraph Ten thereof, that is to say, the lessee has no interest in the award and is entitled to no compensation, because said provisions specify that the award shall belong solely to the landlord and because they further direct that in such event the lease shall terminate upon thirty days' written notice, which notice has been given

Counsel for the lessee, on the other hand, contend that the provisions of said paragraph Ten are not applicable to and do not control a situation where condemnation is had for a temporary use only. In this connection it is pointed out that by the same paragraph it is provided that under certain specified circumstances condemnation shall not effect determination of the lease nor deprive the lessee of all rights thereunder, but on the contrary, in such a contingency, additional obligations are imposed upon the lessors for the benefit of the lessee. Such a situation referred to would arise in the event condemnation should involve a portion of the demised premises upon which buildings are located, in which event the owners at their sole expense would be required to relocate the same elsewhere upon said premises. Under another contingency, the owners would be obligated to pay all assessments levied by reason of the condemnation proceeding. Likewise, attention is called to another provision in the same paragraph which authorizes either party to the lease to terminate the same, should the effect of condemnation be such as to reduce the rentable rooms in the hotel by fifty (50) per cent, or to preclude the subsequent use of the beach frontage of the demised premises.

It is further pointed out that under the condemnation sought herein the Government may surrender the demised premises long before the expiration of the initial term fixed by the lease; also that the same provides that the owners and the tenant may jointly draw upon the $20,000 deposit made by the latter to pay for permanent improvements upon the demised premises, and that such improvements shall become the property of the former. Again it is specified in paragraph Six of the lease that "should said Lessors sell said leased premises prior to the date that the whole of said fund has been invested in said premises, any part remaining unspent at the time of such sale shall revert to Lessee free of any obligation hereunder", but that "any part of said fund not used for improvements * * * during the term of this lease, provided said premises have not been sold by said Lessors, shall revert to * * * Lessors, * * *."

Accordingly it is argued that, carried to their ultimate conclusion, the contentions advanced on behalf of the owners would lead to the inequitable result that the demised premises would be returned to the latter prior to the expiration of the original term of the lease, and all of the tenant's rights would be forfeited to the landlord, although the lessee had committed no default, and although no other event had occurred which under the provisions of the lease entitled the lessors to recover

possession of said premises. For under such circumstances it could successfully be maintained that "said premises have not been sold by said Lessors." The rights thus forfeited would include the tenant's exclusive privilege to the possession and use of said premises and of all improvements thereon, including the improvements paid for by him, and also his right to have refunded to him any unexpended balance of the aforementioned deposit. Likewise, the lessee urges that, by the particular phraseology employed in the first two sentences of paragraph Ten of the lease, the parties to said instrument intended to and did express the idea that the provisions of said paragraph pertained only to situations wherein either the State of California had acquired, or where said state or a political subdivision thereof thereafter might acquire, title to, as distinguished from a leasehold interest in, a portion or portions of the demised premises.

Hence lessee's counsel contend that the construction which the lessors seek to place upon the provisions of the lease would be inequitable and would give to the latter an unfair and unreasonable advantage over the former. On the other hand, upholding the position taken by the lessee and adjudging that the provisions of said paragraph Ten are not applicable to the present suit, counsel assert, would result in giving to the lease the construction most equitable to the parties thereto, instead of one which would give to the landlord an unfair and unreasonable advantage over the tenant.

In United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, suit was brought in eminent domain to acquire temporary occupancy of a leased building taken from a tenant holding under a long-term lease. The estate being acquired by the Government was for a term of approximately one year, while the term of the tenancy would not expire for several years thereafter. Speaking for the Supreme Court, Mr. Justice Roberts at pages 378–380 of 323 U.S., at page 359 of 65 S.Ct., said:

"When the sovereign exercises the power of eminent domain it substitutes itself in relation to the physical thing in question in place of him who formerly bore the relation to that thing, which we denominate ownership. In other words, it deals with what lawyers term the individual's 'interest' in the thing in question. That interest may comprise the group of rights for which the shorthand term is 'a fee simple' or it may be the interest known as an 'estate or tenancy for years', as in the present instance. The constitutional provision is addressed to every sort of interest the citizen may possess. * * *

"But it is to be observed that whether the sovereign substitutes itself as occupant in place of the former owner, or destroys all his existing rights in the subject matter, the Fifth Amendment concerns itself solely with the 'property,' i. e., with the owner's relation as such to the physical thing and not with other collateral interests which may be incident to his ownership. * * *

"The sovereign ordinarily takes the fee. The rule in such a case is that compensation for that interest does not include future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of goodwill which inheres in the location of the land, or other like consequential losses which would ensue upon the sale of the property to someone other than the sovereign. No doubt all these elements would be considered by an owner in determining whether, and at what price, to sell. No doubt, therefore, if the owner is to be made whole for the loss consequent on the sovereign's seizure of his property these elements should properly be considered. But the courts have generally held that they are not to be reckoned as part of the compensation for the fee taken by the Government. * * *

"The right to occupy, for a day, a month, a year, or a series of years, in and of itself and without reference to the actual use, needs, or collateral arrangements of the occupier, has a value."

In the same case, Mr. Justice Douglas, in a concurring opinion in which Mr. Justice Black joined, stated: "It would indeed be a novel rule of law which allowed the Government to oust a person from a portion of his leasehold, occupy the premises, but pay only a part of the rent, leaving the balance to be paid by him who though ousted holds the balance of the term."

In United States v. 150.29 Acres, etc., 2 Cir., 148 F.2d 33, 34, the Federal Government by condemnation acquired the fee to certain lands, improved with several structures held by several tenants under various leases. One of said leases contained a provision reading: "Lessee further agrees

that if at any time during the term of this lease the said premises or any part thereof shall be acquired or condemned and/or purchased by any municipality or political subdivision of the state wherein said premises are located, or by any company or corporation lawfully qualified to exercise the right of eminent domain the lessor shall have the right to cancel and terminate this lease by giving to lessee not less than 30 days' written notice of such intention to cancel."

The same lease further provided that in the event of a sale of the demised premises "lessor reserves and has the right to cancel and terminate this lease to take effect at any time after December 31, 1941, by lessor giving to lessee not less than six (6) months' written notice of such intention so to cancel and terminate;" and also provided that in the event said lease were thus cancelled and the lessee required to vacate the demised premises during the 26-month period beginning January 1, 1942, then the lessee should receive from lessor the sum of $40,000.

The lessor in the case just cited contended that the suit constituted a condemnation within the meaning of the language first above quoted, also that under the same the lessor had the privilege of terminating the lease by giving to the lessee 30 days' written notice, and that at most the question of the value of the leasehold there involved would be limited to a 30-day period.

The District Court ruled that the provision first quoted from the lease in question did not apply to condemnation by the United States. In agreeing with this construction, the Seventh Circuit Court of Appeals said, 148 F.2d at page 35: "The language is too plain to permit us to interpolate the United States as one intended to be covered by this provision. True, the parties might well have included the United States, and we might speculate that it was their intention so to do, but it would be pure speculation and unjustified from the language used. The United States has in some instances been held to be a 'body politic' and 'body corporate,' but we do not think the cases justify the holding that in this instance it was the intention of the parties that the United States be covered by the word 'corporation.' The sequence of the words 'company or corporation' is somewhat significant—they come at the end of a catalogue of entities, commencing with

'any municipality.' It is unlikely that in drafting a lease the parties would, if they intended to include the United States, place it at the end of the list, and there refer to it as a 'company or corporation.' See United States v. Cooper Corporation, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071; Davis v. Pringle, 4 Cir., 1 F.2d 860, affirmed 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974."

In United States v. Four Parcels of Land, D.C., 20 F.Supp. 306, the same being a suit in eminent domain, the District Court was required to construe certain provisions of a lease. The Court there adjudged that the tenant was entitled to an award for the value of his leasehold interest and also that the owner was entitled to an award for the value of his fee burdened with such leasehold. In the course of its opinion the Court, 20 F.Supp. at page 311, said:

"Section 236(a) of the Restatement of the Law of Contracts states: 'An interpretation which gives a reasonable lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect.'

"As was stated in Fleischman v. Furgueson, 223 N.Y. 235, 119 N.E. 400, 402: 'A court will endeavor to give the construction most equitable to both parties instead of the construction which will give one of them an unfair and unreasonable advantage over the other.'

"If there were no paragraph at all in the lease relating to the situation that might arise by reason of a taking of the property in a condemnation, then the law would give the tenant an award for his leasehold interest. Any provision that would be in derogation of the tenant's right to such an award should be clear and unambiguous."

Admittedly, in the instant suit it cannot be said that the State of California or the County of Santa Barbara or any other public body of said state is acquiring by condemnation any additional portion of the leased premises. It is equally clear that in this suit the Federal Government is acquiring, not the fee title to the lands and property involved, but a considerably less estate therein, namely, a tenancy for years, and that on the record before us such estate may end many years prior to the termination of the estate owned by the lessee.

The logic upon which the decisions were based in the cases from which we have heretofore quoted persuades us that by the provisions of the lease under consideration, the parties thereto did not intend to effect a forfeiture of the lessee's rights under a state of facts such as those disclosed by the present record. The situation here is one in which the sovereign exercising the power of eminent domain is substituting itself in relation to an estate or tenancy for years in place of the lessee, but only as to a portion of such lessee's ownership thereof. That is to say, so far as presently disclosed, it is a part of the lessee's ownership of such estate which the sovereign is taking. While it may be that the evidence to be introduced at the trial will prove that the sovereign is also destroying or taking some of the rights of the owner of the fee, it is clear that upon the face of the pleadings the government is here seeking to substitute itself as occupant of the demised premises in place of the owner of the right of such occupancy. The owner of such right being the lessee, it is the latter who "must be put in as good position pecuniarily as if his property had not been taken", and this is to be done by paying to him the value of the interest taken.

We recognize that, taking into consideration the particular provision of the lease which fixes as the maximum rent to be paid by the tenant certain percentages of the gross business done on the demised premises, and furthermore because of the circumstance that under the present record it cannot be determined whether the estate ultimately to be acquired herein by the government will constitute a tenancy extending beyond the term of the existing lease, the lessors may also be adjudged to be entitled to an award herein.

We turn now to a consideration of the question whether, since the defendants have waived a trial by jury, the government is entitled to such trial over the objections of the former. It is argued on behalf of defendants that the Constitution of the United States does not grant the right to a jury trial in an eminent domain proceeding; that by the fifth and seventh amendments to the Constitution a jury trial is guaranteed only in a common-law action; and that a suit in eminent domain is not a proceeding at common law as to which a right to a jury trial is guaranteed, but that

on the contrary a jury trial in eminent domain procedure was unknown at common law. Likewise it is pointed out that the Second War Powers Act, 50 U.S.C.A. Appendix § 631 et seq., under which the instant suit is being prosecuted confers no right to a jury trial, but specifically relegates the question of such right to the law of the state in which the suit is instituted. Again, it is urged that under the applicable statutory provisions the practice, pleadings, forms and modes of proceedings in suits in eminent domain must conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the state within which the United States District Court is held. Hence it is insisted that in the instant suit the determination of the question as to the right to a jury trial must be decided in conformity with the relevant law of the State of California.

Next it is argued that the laws of the State of California do not confer any right to a jury trial in an eminent domain proceeding upon the United States. In that connection it is pointed out that the sole right to a jury trial in such a suit in California arises from Section 14, Article I of the State Constitution. This section, so far as relevant here, reads: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner * * * which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases * * *."

It is further urged that the foregoing provision is one of a number of rights set forth in said Article I and which are guaranteed to the people as against the state. That is to say, the rights there enumerated pertain to those which are taken from the state government for the benefit of the people and do not relate to any powers conferred upon such government, but rather constitute a limitation of power imposed by the people on the state.

Accordingly it is contended that the provisions of said Article I constitute a declaration of rights reserved to the people for their protection against governmental aggression, and that Section 14 of said article grants only to the property owner, but not either to the State of California or to United States, the right to a jury trial in an eminent domain suit.

On the other hand, while conceding that none of the provisions of the United States Constitution grants any right to a jury trial in eminent domain proceedings, and further admitting that the Second War Powers Act confers no right to a jury trial, but specifically relegates the question of such right to the law of the state in which the proceedings are instituted, government counsel contend that the Constitution of the State of California, more particularly in Section 14 of Article I thereof, guarantees not only to the property owner but also to the sovereign the right to a jury trial in such proceedings for the purpose of fixing the compensation to be paid by the latter to the owner.

While it is true, say government counsel, that some of the California decisions refer to the right of the owner to a jury trial, it is not a fact that all of the cases touching upon that subject do so. On the contrary, it is insisted that the principal cases covering such point in which the Supreme Court of California has spoken on the question make no such statement, but instead specifically refer to the right guaranteed by the aforementioned constitutional provision as the right to the trial by jury of a particular issue, to-wit: the issue of compensation to be paid for the taking of private property. Again it is argued that under the Condemnation Conformity Act, 40 U.S.C.A. § 258, which is incorporated by reference in the Second War Powers Act, if the law of the state, constitutional or statutory, excludes the right to trial by jury, neither party to the action is entitled to such a trial; on the other hand, if the state law requires a trial by jury, the granting of such right is imperative unless lawfully waived; and likewise, if the state law is optional or permissive, such right is optional or permissive.

Finally, it is urged by government counsel that Section 14 of Article I of the California Constitution does not constitute the grant of the right to a jury trial in an eminent domain proceeding to only one of the parties thereto, but on the contrary is a mandate that the amount of the compensation to be paid for the property taken shall be ascertained by a jury, unless a jury be waived by all of the parties involved.

In People v. Ricciardi, 23 Cal.2d 390, 401, 144 P.2d 799, 804, the Supreme Court of California said:

"When compensation is claimed either for a taking or a damaging the issues may be presented for adjudication in at least two forms of action. In one there is an absence of a proceeding in eminent domain. In that form of action the property owner seeks relief by bringing an action for compensation for a taking or a damaging of his property or both, as the case may be. * * *

"The other form of action is, as here, a proceeding in eminent domain in which the procedure is laid down by section 1248 and related sections of the Code of Civil Procedure. * * * In the other case the condemning authority, in commencing the proceeding, affirmatively alleges ownership in the defendants, the contemplated taking and severance, and seeks a determination by the court of issues confided by the law to the decision of the court and also seeks a determination by the jury, unless one be waived, of the compensation which should be paid to the property owner."

Further along in the same opinion (at page 805 of 144 P.2d) the court quotes with approval from the decision rendered in City of Oakland v. Pacific, etc., Co., 171 Cal. 392, at page 397, 153 P. 705, at page 707, the following: "It is only the 'compensation,' the 'award,' which our Constitution declares shall be found and fixed by a jury."

Our analysis of the decision rendered in People v. Ricciardi, supra, convinces us that in that portion of the opinion where the above-quoted excerpts are found the Supreme Court of California was discussing what questions may be submitted to a jury in an eminent domain suit, and what questions must be submitted to a jury, unless a jury trial be waived. Likewise, as we read said decision, the court there held that the only question required to be submitted to a jury in such a proceeding is the amount of the award or the compensation to be paid to the property owner, unless a jury be waived in the manner prescribed by State law. In other words, in California, the state, as well as the property owner, is entitled to a jury trial upon the issue of compensation, unless such a trial be waived, and under California practice one is waived by the state as well as the owner, if not demanded as prescribed by law.

In the present suit the government has demanded a jury trial. Accord-

ingly we conclude that upon the issue of the amount of compensation to be awarded herein the government is entitled to a jury trial.