UNITED STATES v. 425,031 SQUARE FEET OF LAND, SITUATED IN CITY OF JERSEY CITY, HUDSON COUNTY et al.

No. 725a.

United States District Court
D. New Jersey.

June 14, 1949.

Alfred E. Modarelli, U. S. Atty. and Robert W. Moncrief, Sp. Asst. U. S. Atty., Newark, N. J., for petitioner.

Green & Yanoff, and Leo Yanoff, Newark, N. J., for defendants.

MEANEY, District Judge.

This proceeding is a consequence of the Government's condemnation and occupancy of certain space in the Harborside Warehouse in Jersey City, New Jersey, during World War II. This matter arises upon the Government's motion to strike any claim made on behalf of Schaffer Belts, Inc. except as a holdover tenant.

By stipulation the parties have set forth the material facts as follows:

In 1941 the Harborside Warehouse Company (hereinafter referred to as Harborside) and Schaffer Belts, Inc. (hereinafter referred to as Schaffer) entered into a lease for the premises in question which expired on the last day of January, 1943. During the latter part of 1942 negotiations began for a new lease. On December 15, 1942, Joseph H. Sauter, general manager of Harborside, sent a letter to Schaffer in which he said:

"In reply to yours of December 10th requesting that we renew your lease for a period of one year, increased costs make it impossible to grant your request. However, we are willing to compromise at 70¢ per square foot per year.

"As your tenancy has been most desirable, we hope you can see your way clear to remain.

"Please advise."

Subsequently in a telephone conversation between Mr. Ludwig Darmstarder, Vice-President of Schaffer and Mr. Sauter it was agreed that Harborside would give and

that Schaffer would take a lease of the space in question for a period of one year from February 1, 1943 containing three one-year renewal option periods from January 31, 1944. On January 13, 1944 R. B. M. Burke, Vice-President of Harborside, sent the following letter to Schaffer:

"The following will confirm your telephone conversation with our Mr. Sauter.

"We will prepare a new lease for the 10,800 sq. ft. of space you now occupy on the 4th floor East of Unit No. 3. It will be for one year from February 1, 1943 at 70¢ per sq. ft. per year. There are to be 3-1 year renewal option periods from January 31, 1944.

"As soon as the lease is prepared, we will forward it to you for completion."

The lease referred to was never executed. Thereafter, until Government occupancy of the premises, Schaffer Belts occupied the premises and paid rent on the basis of 70¢ per square foot. In addition, under date of January 21, 1943, Schaffer sent to Harborside its check in the sum of $45 for the purpose of increasing the security deposit from $585 to $630 as required by Harborside. The check was accepted and cashed by Harborside. Schaffer removed from the premises on September 30, 1943.

The parties also stipulated that Mr. Leo Fisher, General Manager of Harborside would testify if called as a witness that Mr. R. B. M. Burke, Vice-President from June 1940 until his death in March 1945, negotiated for the leasing of space and entered into "agreements" for the making of leases. The By-laws of Harborside provide: "Leases for a longer period than one year, or for an annual rental exceeding six hundred dollars shall be approved by the Board and executed on behalf of the Company by the President, or a Vice-President, and the corporate seal shall be affixed thereto and duly attested."

The practice of the Board of Directors of Harborside was to pass on leases twice each year. Often they were submitted to the Board months after they had been signed by Mr. Burke and rent had been paid. There is no record of disapproval of such a lease.

During its period of occupancy Schaffer had installed electrical taps, risers, switches and other electrical equipment which was rendered useless as a result of the taking.

The parties have further stipulated that if this motion is decided in favor of Schaffer the question of the amount of compensation shall be referred to a jury; otherwise the court shall enter a final judgment in the sum of $394 with interest amounting to $105 (this is based on the Government's concession that Schaffer was at least a hold-over tenant from year to year).

The questions before the court then are:

1. Whether Schaffer had any interest in the premises beyond that of a hold-over tenant from year to year?

2. Whether Schaffer is entitled to compensation for the electrical improvements rendered useless as a result of the taking?

From the correspondence between the parties it seems clear that they contemplated execution of a formal document. Thus the preliminary negotiations themselves could not be construed as vesting any leasehold interest in Schaffer. See Dan Cohen Realty Co. v. National Savings & Trust Co., D.C., 36 F.Supp. 536, affirmed 6 Cir., 125 F.2d 288; Williston on Contracts § 28. However even though the parties contemplated execution of a formal lease, since the essential terms had been agreed upon they effected a contract to lease. See West Heights Realty Corp. v. Adelman, 107 N.J.Eq. 351, 152 A. 196. From the conduct of the parties in continuing the occupancy and in providing for additional security it is apparent that a binding obligation was intended. Nor does the Statute of Frauds vitiate this contract. Section 1, N.J.S.A. 25:1-1, is not applicable since it specifically excepts leases not exceeding the term of three years. Section 5(d), N.J.S.A. 25:1-5, subd. d, requiring a memorandum, is satisfied by the letter of January 13, 1944. Burke's authority to enter into an agreement to lease may reasonably be inferred from Harborside's previous course of dealing as outlined in the stipulation and from the fact that additional security was accepted.

Since Schaffer could have specifically enforced the contract to lease, West Heights Realty Corp. v. Adelman, supra, it follows that it had an equitable interest in the premises based on the contract. This coupled with the value of the option to renew contained in the contract gave it an interest beyond that of a hold-over tenant as conceded by the Government.

■ Under clause 8 of the original lease the electrical improvements made by Schaffer after it moved into the premises in 1937 became the property of the Harborside Warehouse when the lease expired. Moreover, the taking in this case was for a term extending beyond Schaffer's term as in United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729. The court concludes, therefore, that the value of the fixtures can be considered only in so far as they enhanced the value of Schaffer's interest in the premises, not as individual items of compensation, United States v. 150.29 Acres of Land, 7 Cir., 1945, 148 F.2d 33, certiorari denied Eline's, Inc., v. Gaylord Container Corp., 325 U.S. 882, 65 S.Ct. 1576, 89 L.Ed. 1998; Carlock v. United States, 1931, 60 App.D.C 314, 53 F. 2d 926.

Motion denied.